2007-NMCA-025

152 P.3d 842

STATE of New Mexico,
Plaintiff–Appellee,

v.

STEPHEN F., a child, Child–Appellant.

No. 24,007.

Court of Appeals of New Mexico.

Jan. 9, 2007.

Certiorari Granted, No. 30,199,
Feb. 16, 2007.

Gary K. King, Attorney General, Santa Fe, NM, Jacqueline R. Medina, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Vicki W. Zelle, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

FRY, Judge.

{1} In this case we consider the tension between an accused's confrontation rights and our rape shield statute, which precludes admission of evidence of a witness's past sexual conduct under certain circumstances.

Stephen F. (Child) appeals his convictions for two counts of criminal sexual penetration and argues that the trial court erred in excluding evidence of the State's main witness's past sexual activities, which according to Child, showed the witness's motive to fabricate. We conclude that Child made the requisite showing under *State v. Johnson,* "establish[ing] a constitutional right to present evidence otherwise excluded by our [rape shield] statute." 1997–NMSC–036, ¶ 28, 123 N.M. 640, 944 P.2d 869. Therefore, we hold that the trial court abused its discretion in excluding testimony that tended to prove the complaining witness's motive to lie, and we reverse Child's convictions and remand for a new trial. Child makes an additional argument that we briefly address to provide guidance on remand.

**BACKGROUND**

{2} This is our second opportunity to address Child's appeal. Following his convictions, Child appealed, making the same arguments we consider in the present appeal. He also argued that his post-trial dispositional hearing occurred beyond the time limit provided in the Children's Court Rules. Relying on this procedural argument, this Court reversed Child's convictions and remanded the case with instructions to dismiss the charges. *State v. Stephen F.,* 2005–NMCA–048, ¶¶ 25–27, 137 N.M. 409, 112 P.3d 270, *rev'd in part on other grounds,* 2006–NMSC–030, 140 N.M. 24, 139 P.3d 184. On certiorari, our Supreme Court agreed with this Court that the time limit in the Children's Court Rule indeed applied, but reversed this Court with respect to the remedy of dismissal. *Stephen F.,* 2006–NMSC–030, ¶ 19, 140 N.M. 24, 139 P.3d 184. The Supreme Court then remanded the appeal to this Court to resolve the remaining substantive issues. *Id.*

{3} In order to put the facts in context, we first set out the New Mexico rape shield statute. NMSA 1978, § 30–9–16 (1993), provides in part:

A. As a matter of substantive right, in prosecutions pursuant to the provisions of Sections 30–9–11 through 30–9–15 NMSA 1978, evidence of the victim's past sexual conduct, opinion evidence of the victim's past sexual conduct or of reputation for past sexual conduct, shall not be admitted unless, and only to the extent that the court finds that, the evidence is material to the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

. . . .

C. If the evidence referred to in Subsection A . . . of this section is proposed to be offered, the defendant shall file a written motion prior to trial. The court shall hear the pretrial motion prior to trial at an in camera hearing to determine whether the evidence is admissible pursuant to the provisions of Subsection A or B of this section. If new information, which the defendant proposes to offer pursuant to the provisions of Subsection A or B of this section, is discovered prior to or during the trial, the judge shall order an in camera hearing to determine whether the proposed evidence is admissible. If the proposed evidence is deemed admissible, the court shall issue a written order stating what evidence may be introduced by the defendant and stating the specific questions to be permitted.

The corresponding evidence rule, Rule 11–413 NMRA, is consistent with the statute.

{4} The parties do not dispute that on the night in question, Child and the State's main complaining witness and alleged victim (B.G.) engaged in sexual intercourse. B.G. was sixteen at the time, and Child was fifteen. According to B.G.'s trial testimony, Child, B.G., and B.G.'s brother had been watching movies in B.G.'s bedroom. B.G. testified that Child, a friend of her brother and family for nine years, usually slept on the couch in the living room when he stayed over. B.G. then testified that after Child had headed for bed in the living room, he came back into her room and forced her to engage in sexual conduct, including oral, vaginal, and anal intercourse. The morning after the incident, B.G. told her mother that Child had raped her. B.G.'s accusations led to the State's prosecution of Child for, among other charges, three counts of criminal sexual penetration in violation of NMSA 1978, § 30–9–11 (2003). Child was convicted of two counts of criminal sexual penetration.

{5} Child's theory of the case was that the intercourse was consensual. Specifically, Child's defense was that B.G. lied because she feared punishment from her parents for engaging in premarital sex. Child based his defense on B.G.'s statement that prior to the incident with Child, she had sexual relations with her then boyfriend, and that her parents, upon learning of their daughter's sexual conduct, had punished her. Because of the punishment that B.G. had experienced as a result of her prior consensual sexual experience, Child argued B.G. was motivated to lie to avoid punishment.

{6} Pursuant to the rape shield statute and corresponding rule of evidence, Child requested a hearing to determine the admissibility of evidence regarding B.G.'s prior sexual conduct, and the punishment she suffered because of it, to support Child's theory that B.G. had motive to fabricate the rape. Child stated that he was "not offering evidence of [B.G.'s] prior sexual encounter to show propensity," but that he intended "to show that she has a powerful motive to fabricate." In her statement to defense counsel, B.G. said her mother "was really upset[ ] [about my having engaged in sex with my boyfriend;] she said that it was going to take her a long time to trust me again, ... about three or four months[,] ... and I wasn't allowed to go out on dates with guys." In the same statement, B.G. explained that her mother's disapproval of B.G.'s sexual behavior was based on religious values. Child's theory was that B.G. was motivated to fabricate the claim of rape because she feared the punishment and disapproval of her parents, devout Christians who "don't believe in sex before marriage."

{7} Relying on the rape shield statute and corresponding rule of evidence, the State opposed Child's motion and argued that Child was using the motive to fabricate as a pretext for offering the evidence to show propensity. The State argued that "the way a family with strong Christian values chooses to handle a family problem" was irrelevant to the issues in the case.

{8} At the pretrial in camera hearing on the motion in limine, the trial court agreed with the State's position and explained to defense counsel, "I understand fully your statement that that is not your intent [to use evidence of B.G.'s prior sexual conduct to establish consent based on B.G.'s propensity], but is that in fact the result? Is that not the collateral benefit or, better stated, the collateral damage that occurs?" In denying Child's motion seeking admission of B.G.'s statement, the trial court said, "I do find specifically that the prejudicial aspects of this would greatly outweigh the probative value. I do not address it ... under the confrontation aspect but rather under the measure of prejudice versus probative value."

## DISCUSSION

### The Rape Shield Law

{9} The primary issue in this case is resolved by *Johnson*. In that case, our Supreme Court explained that rape shield laws were enacted in reaction to the historic use of evidence of an alleged victim's prior sexual conduct "on the reasoning that someone who had consented previously would have been more likely to have consented on the particular occasion at issue." 1997–NMSC–036, ¶ 11, 123 N.M. 640, 944 P.2d 869. In general, rape shield laws restrict the use of evidence of an alleged victim's prior sexual conduct to establish consent because such evidence "is only marginally, if at all, probative of consent." *Id.* ¶ 12 (internal quotation marks and citation omitted). In shielding alleged victims from exposing their sexual history, rape shield laws protect alleged victims from harassment and encourage them to report and testify. *Id.*

{10} Rape shield laws are not absolute bars to the admission of an alleged victim's sexual history. The purpose of rape shield laws is "not to remove *relevant* evidence from the jury's consideration." *Id.* ¶ 21 (emphasis added) (internal quotation marks and citation omitted). Our Supreme Court in *Johnson* explained that "evidence of [the alleged victim's] prior sexual conduct *must* be admitted if a defendant shows that evidence implicates his or her constitutional right of confrontation." *Id.* ¶ 22 (emphasis added). For example, a defendant's right to show the alleged victim's bias can trump the protection afforded by a rape shield law. *Cf. Olden v. Kentucky*, 488 U.S. 227, 231, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988) (per cu-

riam) (reversing the defendant's conviction on grounds that the defendant was denied opportunity to show "prototypical form of bias" when the trial court disallowed the defendant from cross-examining the witnesses about her living arrangements, which tended to prove her motivation to fabricate claim of rape (internal quotation marks and citation omitted)); *Davis v. Alaska*, 415 U.S. 308, 319, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (holding that the defendant's right to confront and cross-examine witness to show evidence of witness's bias outweighed statutory protection offered to witnesses, who were juvenile offenders, from cross-examination regarding their records). In order for a defendant to introduce evidence of an alleged victim's sexual history, "a defendant must show sufficient facts to support a particular theory of relevance" that would "enable the trial court to perform its role in identifying a theory of relevance prior to balancing probative value against prejudice." *Johnson*, 1997–NMSC–036, ¶ 32, 123 N.M. 640, 944 P.2d 869. Thus, at bottom, the admission or exclusion of such evidence is entrusted to the trial court's sound discretion. *Id.* ¶ 21.

{11} *Johnson* instructs us that "[a]fter assessing the legitimate probative value of the evidence, the [trial] court should consider the effect of excluding such evidence on [the] defendant's right to a fair trial and balance that effect against the potential prejudice to the truthfinding process itself." *Id.* ¶ 25 (internal quotation marks and citation omitted). In this case, the possible potential prejudice was that the jury would be confused or misled, "or [that] the jury [would] decide the case on an improper or emotional basis," such as irrelevant prior sexual conduct of the alleged victim. *Id.* (internal quotation marks and citation omitted).

{12} In connection with the trial court's balancing process, *Johnson* explains that a defendant's constitutional confrontation right "informs the trial court's exercise of discretion under the [rape shield] statute and rule." *Id.* ¶ 28. To assist the trial court in exercising its discretion, *Johnson* adopted, as a possible framework for analysis, a five-factor test. *Id.* If a defendant makes a sufficient showing under the test, he establishes a constitutional right to present evidence that would otherwise be excluded under the rape shield law. *Id.* The five-part test consists of the following factors:

> (1) whether there is a clear showing that complainant committed the prior acts; (2) whether the circumstances of the prior acts closely resemble those of the present case; (3) whether the prior acts are clearly relevant to a material issue, such as identity, intent, or bias; (4) whether the evidence is necessary to the defendant's case; [and] (5) whether the probative value of the evidence outweighs its prejudicial effect.

*Id.* ¶ 27.

{13} We apply the five factors to the present case. With respect to the first factor, the fact that B.G. engaged in the prior sexual act that Child seeks to introduce is uncontested. B.G. spoke openly about her punishment for having sex with her boyfriend in a statement she gave to the defense. Thus, the first factor is met.

{14} The second factor, whether the circumstances of the prior acts closely resemble those of the present case, does not apply in this case. We acknowledge the State's argument that the prior acts of sex between B.G. and her then boyfriend were "intimate consensual acts," as compared to the "force and coercion" allegedly used by Child in this case. However, Child intended to show that B.G.'s prior sexual conduct and the resulting punishment created a motivation to lie, as opposed to showing any pattern or series consistent with prior sexual conduct. Child was not relying on any of the details of B.G.'s prior acts to analogize factual similarities between B.G.'s prior sexual experiences and her experience with Child. Consequently, we conclude that under the circumstances of this case, the second factor is unhelpful in evaluating the admissibility of the evidence. It is not necessary that each factor be satisfied. Our Supreme Court in *Johnson* adopted the five factors merely as a framework for analysis and did not intend for the factors to be determinative. *Id.* ¶ 28; *cf. State v. Pulizzano*, 155 Wis.2d 633, 456 N.W.2d 325, 333 (1990) (concluding that the second factor was satisfied because the al-

leged victim's prior sexual conduct "show[ed] an alternative source for sexual knowledge, and [was] necessary to rebut the logical and weighty inference that [the child victim] could not have gained the sexual knowledge [absent] the sexual assault[ ]").

{15} In considering the third factor, whether the prior acts are clearly relevant to a material issue, such as identity, intent, or bias, the inquiry is whether the evidence Child sought to admit tended to prove B.G.'s motivation to fabricate. Child asked the trial court to admit evidence that B.G. had previously had sex, that B.G.'s mother had been "really upset" upon learning of her daughter's sexual conduct, and that B.G.'s mother had forbidden B.G. from dating and punished her for three or four months. The State primarily contends that these facts do not support the theory that B.G. had a motive to lie. The State argues that Child would have to show facts tending to prove "that [B.G's] mother knew or even suspected that her daughter had once again engaged in ... consensual sex with [Child]" in order for Child to establish that B.G. had a motive to fabricate a claim of rape. The State also argues that "[b]ased on [B.G.'s] prior experience, had the sex with [Child] been consensual, [B.G.] would have had every reason *not* to tell her parents[, and w]ith *no disclosure to the parents there is no fear of punishment and consequently no motive to fabricate."* We think the State's arguments provide one possible interpretation of the facts, while Child's view provides another interpretation. This presents a classic jury question. *See State v. Gurule,* 2004-NMCA-008, ¶ 38, 134 N.M. 804, 82 P.3d 975 ("It is up to the jury to weigh the testimony and contradictory evidence and believe or disbelieve any testimony it hears.").

{16} We conclude that Child has articulated a plausible theory of relevance for the evidence of B.G.'s prior sexual conduct. Child expressly articulated his theory to the trial court in both his written motion in limine and at the hearing on the motion. Unlike the defendant in *Johnson,* Child specifically argued that he intended the evidence to show that B.G. had a motive to lie, and Child provided the trial court with a legitimate

theory of relevance. *See* 1997-NMSC-036, ¶ 37, 123 N.M. 640, 944 P.2d 869 (rejecting the defendant's claim of relevancy because he "never expressed his intention to use the prior sexual conduct evidence to expose the victims' motives to lie or as a basis for a theory of relevance other than propensity"). Because Child articulated a theory of his defense that is supported by the evidence he sought to have admitted, he has demonstrated that B.G.'s prior acts of sexual conduct are relevant to a material issue.

{17} The fourth factor, whether the evidence is necessary to the defendant's case, is also met here. Because the entire case depended upon whether the jury believed Child's or B.G.'s version of the facts, evidence of B.G.'s motive to lie was the basis for Child's entire defense. Child explained that the evidence was crucial to his case because "jurors certainly are going to be asking themsel[ves, w]ell, why would she lie?" Child's defense was that B.G. consented. Denying Child's request to admit that B.G. had a strong motive to lie—fear of admonishment and punishment from her parents—essentially stripped Child of his only defense. We therefore conclude that the excluded evidence was not only necessary but crucial to Child's defense.

{18} Under the final factor, the trial court had to weigh the probative value of Child's being able to present his defense against the potential prejudice to the truth-finding process. At the hearing on the motion to admit the evidence, Child's counsel articulated the proper role of the trial court by stating that "the court is being asked to balance [Child's] confrontation rights." Instead of considering Child's constitutional rights, the trial court excluded the evidence by stating, *"I do not address it in terms suggested by counsel, that is, under the confrontation aspect* but rather under the measure of prejudice versus probative value." (Emphasis added.) Because Child made the requisite particularized showing that the evidence was both highly probative of B.G.'s motive to lie and crucial to his defense, the trial court's failure to address the evidentiary issue "under the confrontation aspect" amounted to a misunderstanding of the bal-

ance the trial court must employ in these situations. A trial court *must* consider a defendant's confrontation rights in exercising its discretion to admit or exclude evidence of this nature. Because Child established relevancy and necessity and because the trial court failed to consider this, we hold that the trial court abused its discretion in excluding the evidence.

{19} Our holding is supported by factually analogous rape cases from other jurisdictions. In *Commonwealth v. Stockhammer*, 409 Mass. 867, 570 N.E.2d 992, 994–95 (1991), both the alleged victim and the defendant testified that sexual intercourse occurred, but the defendant claimed it was consensual. *Id.* Prior to the alleged rape, the defendant and the alleged victim were close friends and the alleged victim had a boyfriend with whom she was sexually active. *Id.* at 994. The defendant's theory was that the alleged victim accused him of rape because she feared angering her parents, who "strongly disapproved of premarital sex," and she feared upsetting her boyfriend, who would also be angry if he learned she had sex with the defendant. *Id.* at 998. The trial court excluded evidence of the alleged victim's prior sexual conduct, but the Massachusetts Supreme Court reversed on appeal because "the judge prevented counsel from pursuing on cross-examination a line of inquiry that ... could have established that the complainant was biased and had a specific reason to lie about what happened." *Id.* at 1000; *see also State v. DeLawder*, 28 Md.App. 212, 344 A.2d 446, 451 (Ct.Spec.App.1975) (holding the defendant should have been allowed to cross-examine the alleged victim regarding her prior sexual conduct as it tended to prove that she had a motive to lie because she was pregnant by another man and feared her mother's anger).

{20} Child, like the defendant in *Stockhammer*, wanted to present evidence of B.G.'s prior sexual conduct to demonstrate B.G.'s motive to lie in order to avoid the punishment she had previously suffered for engaging in premarital sex. Like the Massachusetts court, we think that a teenage girl's fear of punishment from her parents for engaging in premarital sex tends to prove

her motivation to fabricate a claim of rape to cover up consensual sex. The trial court should allow Child to introduce this relevant evidence on retrial. Because of our holding, we need not address Child's alternative argument that the trial court erroneously denied his motion for a new trial.

**Jury Instructions**

{21} Because the issue may arise on remand, we briefly address Child's challenge to the jury instructions. Child contends the jury instructions given by the trial court misleadingly defined the essential element of unlawfulness. Child argued that the unlawfulness instruction, UJI 14–984 NMRA, criminalized sexual touching that was "done with the intent to arouse or gratify sexual desire," which is incongruent with Child's defense that the sexual conduct was consensual. *Id.* We note that the jury instructions have been amended since the filing of this appeal. UJI 14–984 has been withdrawn and the proposed jury instruction that Child supported, UJI 14–132 NMRA, has been amended and should be used if Child requests it on remand.

**CONCLUSION**

{22} For the foregoing reasons, we reverse Child's convictions and remand for a new trial consistent with this opinion.

{23} **IT IS SO ORDERED.**

WE CONCUR: CELIA FOY CASTILLO and MICHAEL E. VIGIL, Judges.