2007-NMCA-110

165 P.3d 1161

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Christopher D. PAYTON, Defendant–Appellant.**

**No. 25,532.**

Court of Appeals of New Mexico.

June 25, 2007.

Certiorari Denied, No. 30,557, Aug. 9, 2007.

386

Gary K. King, Attorney General, Santa Fe, NM, Max Shepherd, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Nancy M. Hewitt, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

WECHSLER, Judge.

{1} Defendant appeals his convictions for criminal sexual penetration of a minor (CSPM), criminal sexual contact of a minor (CSCM), and intimidation of a witness. The victims were two daughters of his girlfriend, who were approximately eight and ten years old when the offenses occurred. This opinion addresses only Defendant's claim that he should have been allowed to present evidence that the younger girl had been previously sexually abused by someone else, in order to establish that she had an alternate source of sexual knowledge. We hold that Defendant was denied due process and a fair trial when he was not allowed to show that she had an alternate source of sexual knowledge and reverse Defendant's convictions on Counts 6 and 7. For the reasons discussed in a memorandum opinion, filed contemporaneously with this opinion, we conclude that Defendant's other issues are without merit and affirm all of Defendant's other convictions.

## BACKGROUND

{2} The victims' mother testified that Defendant moved in with her in 1999. Defendant took care of her children while she worked the night shift. The victims' older sister, Deserea, testified that one night when her mother was at work, she walked into her mother's bedroom and saw Defendant pulling

up his underwear, and her sister, Skye, also pulling up her underwear. The victims' mother testified that in July 2001, she arrived home and Deserea was waiting up for her, terrified. Deserea told her that she had gone into mother's bedroom and turned on the light. When she did, Defendant and Skye both pulled up their pants. Mother immediately confronted Defendant, who responded by grabbing her by the throat and throwing her on the bed. He left after disabling her vehicle and taking the telephones from the house with him.

{3} Skye testified that at the end of the summer after third grade, Defendant touched her vagina with his hands and mouth and penetrated her vagina with his fingers. She testified that on one occasion, "I had a pillow on my face, and he was using his—he was putting his fingers inside of me." She said he touched her vagina with his fingers more than ten times and with his tongue about four times. The younger sister, Gabrielle, testified that Defendant touched her vagina and that his fingers went in her vagina. Both girls also testified that Defendant threatened to kill them and their family members, or hurt a family member, if they told anyone what was happening.

{4} Defendant testified and denied wrongdoing. His defense also consisted of a medical expert criticizing the way information was documented in medical reports and explaining possible reasons children make false allegations of sexual abuse. At the close of the case, Defendant was convicted of four counts of CSPM, three counts of CSCM, and two counts of intimidation of a witness.

## ADMISSION OF EVIDENCE OF PRIOR ABUSE OF GABRIELLE

■ {5} Defendant argues that it was error to preclude evidence that Gabrielle was previously the victim of a sexual assault by her seven-year-old cousin. The incident involved digital penetration and occurred a few years before Gabrielle made the allegations against Defendant. Defendant made several arguments below. He argued that because Gabrielle was young, the evidence was necessary to counter the jury's natural assumption that she would not have knowledge of sexual matters unless Defendant had actually molested her. Defendant argued that the evidence would show an alternate source of sexual knowledge and therefore would be relevant. Defendant also argued that the evidence would be relevant because Gabrielle received a great deal of attention from the previous assault, and such attention was a potential motivation for making allegations against Defendant. The State responded that the rape shield law, NMSA 1978, § 30-9-16(A) (1993), and Rule 11-413(A) NMRA, prohibited the inquiry, as did our opinion in *State v. Hueglin*, 2000-NMCA-106, 130 N.M. 54, 16 P.3d 1113. The trial court reasoned that *Hueglin* prohibited the evidence and precluded Defendant from introducing the fact that Gabrielle had been previously abused. We review this decision for an abuse of discretion. *See State v. Woodward*, 121 N.M. 1, 4, 908 P.2d 231, 234 (1995).

{6} We disagree that *Hueglin* precludes Defendant from introducing evidence that Gabrielle had an alternate source of sexual knowledge. *Hueglin* affirmed the suppression of evidence that an adult woman was sexually abused twenty-five years earlier. *Hueglin*, 2000-NMCA-106, ¶¶ 25-26, 130 N.M. 54, 16 P.3d 1113. But *Hueglin* is distinguishable. There, the defendant argued that the prior assault was relevant because the victim may have been confused and somehow was reliving the prior assault. *Id.* ¶ 26. We rejected this contention because it was unsupported by any expert testimony and was nothing more than "speculation based on lay psychology." *Id.* This case is quite different and is not addressed by *Hueglin*. Section 30-9-16(A) precludes evidence of the victim's past sexual conduct, unless "the evidence is material to the case and ... its inflammatory or prejudicial nature does not outweigh its probative value." Rule 11-413(A) is consistent. *See State v. Johnson*, 1997-NMSC-036, ¶¶ 18-19, 123 N.M. 640, 944 P.2d 869. In this case, Defendant's concern was that the jury would assume that an eight-year-old girl would not know about digital penetration and must have learned about it in some manner, likely from Defendant's actions. As we discuss in more detail below, that assumption is natural and potentially damaging, and a defendant should be

allowed to answer it with relevant, admissible evidence. The problem presented in this case is concrete and is not speculative like the theory proffered by the defense in *Hueglin*.

{7} Like *Hueglin*, *Johnson* recognizes the important policy of protecting victims from irrelevant inquiries into their past sexual conduct. *Johnson*, 1997–NMSC–036, ¶ 21, 123 N.M. 640, 944 P.2d 869. *Johnson* concluded that, in that case, the defendant had failed to show that the evidence he sought to introduce—evidence of prostitution—was relevant. *Id.* ¶ 40. But *Johnson* also recognizes that, in a proper case, evidence involving other sexual conduct may be sufficiently probative of an issue in the case so that it becomes admissible. *Id.* ¶ 19 ("Nothing in our statute or rule, however, limits the reasons a court might find evidence material and of sufficient probative value to justify admission."). According to *Johnson*, a defendant's right to "challenge an opposing version of facts ... is a critical limitation on the trial court's discretion to exclude evidence." *Id.* ¶ 23. If the application of the rape shield law or rule "operates to preclude the defendant from presenting a full and fair defense, the statute and rule must yield." *Id.* ¶ 24. *Johnson* expresses a number of guidelines to help the trial court exercise its discretion, but emphasizes that they are guidelines, not requirements. *Id.* ¶¶ 26–28. "There may be other showings that are equally sufficient. We do not intend to limit the trial courts in the exercise of discretion under the rule and statute, but rather to suggest a possible framework for exercising that discretion." *Id.* ¶ 28. In sum, a defendant seeking to admit evidence of prior sexual conduct "must show sufficient facts to support a particular theory of relevance." *Id.* ¶ 32. The trial court must then balance probative value against prejudice. *See id.* Admissibility must be determined on a "case by case basis." *Id.* ¶ 20.

{8} In *State v. Stephen F.*, 2007–NMCA–025, 141 N.M. 199, 152 P.3d 842, *cert. granted*, 2007–NMCERT–002, 141 N.M. 339, 154 P.3d 1239, we held that the defendant had a constitutional right to present evidence of the victim's sexual history. *Id.* ¶ 1. The defendant's theory was that he had engaged in consensual sexual conduct with the sixteen-year-old victim and the victim had lied to avoid punishment by her parents. *Id.* ¶¶ 4–5. We held that the defendant was entitled to introduce evidence that the victim had previously been severely punished for engaging in consensual sex. *Id.* ¶¶ 5–6, 20. We emphasized that "[a] trial court *must* consider a defendant's confrontation rights in exercising its discretion to admit or exclude evidence of [past sexual conduct]." *Id.* ¶ 18. Because the victim's history tended to show a motive to lie, we held that the evidence was relevant and should have been admitted. *Id.* ¶ 20.

{9} Although *Hueglin*, *Johnson*, and *Stephen F.* provide parameters, New Mexico has not yet addressed the admissibility of evidence showing that a young victim of sexual abuse had an alternate source of sexual knowledge derived from a previous act of abuse. In a somewhat different context, we have required a new trial when a defendant was not allowed to introduce evidence that the young victim had advanced sexual knowledge prior to any contact with the defendant in order to rebut the state's expert's opinion that the victim's knowledge of sexual terminology supported the victim's claim of sexual abuse. *See State v. Ortiz–Burciaga*, 1999–NMCA–146, ¶¶ 13–20, 128 N.M. 382, 993 P.2d 96. *Ortiz–Burciaga* is distinguishable because it does not deal with prior sexual abuse as an alternate source of sexual knowledge, but it is relevant because it recognizes that a victim's sexual knowledge may be admissible in order for a defendant to properly assert a defense. *Id.* ¶ 17.

{10} The issue raised in this case—whether a defendant may introduce the fact that a victim has been previously sexually abused to show an alternate source of sexual knowledge—has been addressed by commentators and by other states, and there is ample authority to justify the admission of such evidence.

[T]he prosecutor may focus the jury's attention on the child's developmentally unusual knowledge of sex. In these circumstances, a defendant needs to inform the jury that the child possessed sexual knowl-

edge that would allow the child to fantasize or fabricate the acts alleged against the defendant. Courts often allow evidence of a child's other sexual experience to establish a source of sexual knowledge.

2 John E.B. Myers, *Myers on Evidence in Child, Domestic and Elder Abuse Cases* § 12.13 (2005). In this case, the prosecutor relied on the natural assumption that young girls are sexually naive, telling the jury during closing, "How do you suppose an 11-year-old child, an 8, [a] 9-year-old child, knows about an act of oral sex? They knew about it, didn't know what it was called. They knew about it because he performed oral sex on them. That's how they knew about it." The prosecutor's comment referred to both girls, and referred to oral sex, not digital penetration. The closing argument is therefore somewhat inconsistent with the trial testimony, because only Skye testified that Defendant engaged in oral sex with her. Gabrielle did not testify that Defendant engaged in oral sex with her, but testified only that he digitally penetrated her. However, we do not believe that the prosecutor's failure to refer to knowledge of digital penetration makes the comment any less significant. The prosecutor's argument highlights the dynamic that sexual knowledge inappropriate for a young child leads to an inference that the child could only have learned about it because the child was victimized by the defendant.

{11} Moreover, the inference of guilt does not depend on whether the prosecutor expressly raises it. The assumption of sexual naivete is so entrenched that there is a substantial risk the jury will make such an assumption even if the prosecution does not directly inject it. *See State v. Jacques*, 558 A.2d 706, 708 (Me.1989) ("Where the victim is a child, ... the lack of sexual experience is automatically in the case without specific action by the prosecutor."). Because this assumption has great power to tip the balance against a defendant, relevant evidence to counter such arguments, if it exists, is essential to a proper defense. *Id.*

{12} While no one test is applicable to each case, we have previously held that some factors to consider in determining whether evidence of the sexual history of a victim should be admitted are: (1) the degree to which the prior acts have been proven; (2) the close resemblance of the prior acts to the current acts; (3) the relevance of the prior acts; (4) the necessity of the evidence; and (5) whether the evidence is more probative than prejudicial. *Stephen F.*, 2007–NMCA–025, ¶ 12, 141 N.M. 199, 152 P.3d 842; *see also State v. Budis*, 125 N.J. 519, 593 A.2d 784, 790 (1991) (stating that the probative value of the evidence depends on whether there is clear proof that the prior acts occurred, whether they are relevant to an issue in the case, and whether they are necessary to the defense); *State v. Pulizzano*, 155 Wis.2d 633, 456 N.W.2d 325, 335 (1990). When the evidence is intended to show the origin of sexual knowledge in a child victim, if the prior act or incident is different, the evidence will likely not be relevant. *See Budis*, 593 A.2d at 790; *see also People v. Woodward*, 116 Cal.App.4th 821, 10 Cal. Rptr.3d 779, 787 (2004) (holding that evidence was irrelevant because the prior sexual contacts were dissimilar to the charged crime).

{13} The age of the victim is also a relevant consideration. At some point, the dynamic requiring a defendant to be able to show an alternate source of sexual knowledge loses force as the child becomes older. *See Budis*, 593 A.2d at 791 (noting that evidence of prior sexual experience is less probative in cases involving older children). For example, it may have doubtful application once a child turns twelve or thirteen. *See* 2 Myers, *supra*, § 12.13 ("In cases involving adolescents, such evidence may be excluded."). We offer no opinion if a child is ten or eleven and note that expert testimony about the level of knowledge of a ten- or eleven-year-old child might be warranted. But if a child is younger than ten, and especially at earlier stages, the assumption that the child will have no sexual knowledge gains force, and the need to counter it with evidence that the child has an alternate source of knowledge becomes stronger. In this case, Gabrielle was eight, one or two months shy of her ninth birthday, when she first made the allegations in July 2001. She was sufficiently young to raise the

assumption that she was sexually naive and could not have known about digital penetration unless Defendant engaged in that act with her.

{14} Applying the appropriate guidelines, we conclude that Defendant was not able to properly defend without the evidence. In this case, there was no dispute about the fact that Gabrielle was previously sexually assaulted; the State only argued that it was inadmissible. The previous act of sexual abuse, digital penetration, was also charged in this case. Gabrielle was eight years old when she made the allegation that Defendant digitally penetrated her, an age young enough that it would be necessary to rebut the jury's natural assumption that she was too young to know about such a sexual act unless the act, as charged against Defendant, actually occurred. Consequently, we believe that all of the relevant factors required the admission of the evidence of the other act of abuse. *See, e.g., Jacques,* 558 A.2d at 708 (holding that evidence of prior sexual abuse of the victims should have been admitted to show knowledge). The need for Defendant to introduce the evidence is accentuated by the fact that the prosecutor apparently effectively urged the jury to find that someone as young as Gabrielle would not have knowledge of sexual matters unless Defendant had victimized her.

{15} Our holding does not express an automatic right to introduce evidence of all sexual conduct or activity of a young victim. A defendant must always demonstrate relevancy. However, this case is one in which Defendant's right to present evidence in his defense trumps the unfortunate embarrassment to the victim. In this case, the jury would naturally assume that a young victim could not have known about sexual matters and must have known about them only because Defendant actually committed the offenses. This assumption was in play in the case even if the prosecutor had not mentioned it, but the danger it presented was compounded when the prosecutor in effect invited the jury to embrace the assumption. Consequently, fairness required that Defendant be allowed to counter the jury's natural assumption, and the prosecutor's argument,

with relevant evidence showing that the victim had an alternate source of sexual knowledge. We conclude that Defendant's right to a fair trial, including the right to present evidence in his defense, was violated. *See, e.g., State v. Stanley,* 2001–NMSC–037, ¶¶ 18, 24, 131 N.M. 368, 37 P.3d 85 (holding that a defendant's fundamental right to present a defense and to introduce evidence negating the state's evidence was violated and that a new trial was warranted).

{16} We also conclude that the error was not harmless. There was no physical evidence and all of the evidence was testimonial. Under the circumstances, we cannot say the error was harmless. *See State v. Balderama,* 2004–NMSC–008, ¶ 41, 135 N.M. 329, 88 P.3d 845 (stating that "[e]rror in the exclusion of evidence in a criminal trial is prejudicial and not harmless if there is a reasonable possibility that the excluded evidence might have affected the jury's verdict"); *Ortiz–Burciaga,* 1999–NMCA–146, ¶ 19, 128 N.M. 382, 993 P.2d 96 (holding that the exclusion of evidence of the victim's sexual knowledge was not harmless error when it was key to rebutting the state's expert's testimony).

## CONCLUSION

{17} We reverse Defendant's CSPM and CSCM convictions related to Gabrielle, Counts 6 and 7, and remand for further proceedings consistent with this opinion. For the reasons expressed in our memorandum opinion, we affirm Defendant's remaining convictions.

{18} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN, Chief Judge and MICHAEL E. VIGIL, Judge.