This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37710**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**COLIN O'KEEFE,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jacqueline D. Flores, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Lauren Joseph Wolongevicz, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Gregory B. Dawkins, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**B. ZAMORA, Judge.**

**{1}**    Defendant Colin O'Keefe appeals his two convictions of criminal sexual contact of a minor (CSCM) in the second degree, contrary to NMSA 1978, Section 30-9-13(B)(1) (2003). Defendant argues that (1) the convictions violate the prohibition against double jeopardy, and (2) the district court violated his constitutional right to confront and cross-examine Victim by excluding evidence of Victim's prior sexual abuse allegation.

We reverse one of Defendant's CSCM convictions on double jeopardy grounds but otherwise affirm.

**BACKGROUND**

**{2}**     In April 2015, Victim, who was twelve years old at the time, visited her friend K.O. at K.O.'s grandparents' home for a sleepover. Defendant is K.O.'s father and lived in the same home with K.O. and her paternal grandparents. That evening Victim and K.O. watched television and ate food in K.O.'s room before they went to sleep on the bottom bunk of K.O.'s bed.

**{3}**     Later that night, Victim awoke to find Defendant rubbing her back under her shirt. Victim fell back asleep, but Defendant woke Victim again, this time requesting that she go to his room. Although she did not want to go, at Defendant's urging, Victim eventually conceded and accompanied Defendant to his room. While Victim and Defendant were alone together in Defendant's room, Defendant removed his sweatpants and "put them on" Victim. Thereafter, Victim returned to K.O.'s room where she fell asleep again.

**{4}**     Defendant woke Victim up a third time and "climbed in bed with [Victim] and [K.O.]" Victim explained that, upon entering the lower bunk bed, Defendant faced her putting her "leg over him." Defendant then placed his hands in Victim's pants grabbing her "bottom" and in between her "bottom on the back side." When asked by the State if Defendant had touched Victim's "bottom and in between her cheeks" Victim responded by saying, "Yes."[1] In order to stop Defendant, Victim "hit him in the face with [her] palm." Victim testified that Defendant "smelled like cigarettes and alcohol" during the encounter. After the incident, Victim stated that she "ran from [Defendant] to the living room" where Defendant apologized and walked out. The following day, Victim told K.O. about the encounter, and K.O. in turn informed K.O.'s mother. K.O.'s mother informed Victim's mother, who then contacted the police.

**{5}**     The State indicted Defendant on four counts of CSCM, two of which the district court dismissed on Defendant's motion for directed verdict. During trial, Defendant moved to admit evidence that, several years prior to the incident with Defendant, Victim alleged that her grandfather had abused her. At an in-camera hearing, Defendant argued that the prior allegations were relevant because they demonstrated that Victim confused the two incidents. The district court found that the evidence was not relevant and denied Defendant's motion.

---

1 The State's theory of the case was that when Defendant touched Victim "between her cheeks" he touched her genitalia, which was the basis for the second count of CSCM. However, when the State asked Victim, "Did [Defendant] touch your vagina?" Victim responded, "I don't remember."

**{6}** At the close of evidence, a jury convicted Defendant of two counts of CSCM in the second degree for the touching of Victim's buttocks and genitalia that occurred when Defendant climbed into bed with Victim.[2] This appeal followed.

## DISCUSSION

### I. Double Jeopardy

**{7}** Defendant argues that his two convictions for CSCM violate his right to be free from double jeopardy because both convictions arose out of a single act. The State concedes that one of Defendant's CSCM convictions should be vacated because Victim's "testimony established one continuous course of conduct." While we are not bound by the State's concession, *State v. Palmer*, 1998-NMCA-052, ¶ 12, 125 N.M. 86, 957 P.2d 71, we agree.

**{8}** "In unit of prosecution cases, the defendant is charged with multiple violations of a single statute based upon acts that may or may not be considered a single course of conduct." *State v. Sena*, 2016-NMCA-062, ¶ 8, 376 P.3d 887. To determine the correct unit of prosecution, we begin by analyzing "whether the Legislature intended punishment for the entire course of conduct or each discrete act undertaken by a defendant." *Id.* (alteration, internal quotation marks, and citation omitted). We have previously held that the CSCM statute does not clearly define the unit of prosecution, and accordingly, that legislative intent as expressed in the statute itself is ambiguous. *See State v. Ervin*, 2008-NMCA-016, ¶ 44, 143 N.M. 493, 177 P.3d 1067. Where a unit of prosecution is not clearly defined by statute, we divine legislative intent by analyzing "whether a defendant's acts are separated by sufficient indicia of distinctness." *Sena*, 2016-NMCA-062, ¶ 9 (internal quotation marks and citation omitted). In analyzing the indicia of distinctness, we consider such factors as the "the timing, location, and sequencing of the acts, the existence of an intervening event, the defendant's intent as evidenced by his conduct and utterances, and the number of victims." *Ervin*, 2008-NMCA-016, ¶ 46 (internal quotation marks and citation omitted).

**{9}** In *Ervin*, we reversed two of the defendant's three CSCM convictions because his conduct did not amount to separate offenses under our indicia of distinctness analysis. *Id.* ¶¶ 46-47. There, the defendant massaged a child's body, touching three body parts: breasts, buttocks, and vagina. *Id.* ¶ 46. We reasoned that the defendant's actions were "one continuous course of conduct" because "[t]here was no lapse in time" and "no intervening event" between the defendant's acts. *Id.* Further, "[t]here was only one victim, and [the d]efendant apparently had only one motive." *Id.* We held that the defendant's three counts of CSCM violated his right to be free from double jeopardy. *Id.* ¶ 47.

**{10}** Here, as in *Ervin*, Defendant was convicted of two counts of CSCM stemming from one continuous course of conduct that occurred when Defendant woke Victim for

---

2Defendant was not convicted of any counts related to the two previous interactions with Victim alleged to have occurred during the night at issue.

the last time and crawled into bed with her. Defendant placed his hands into Victim's pants grabbing her buttocks and touching her "between her cheeks" under the buttocks. The State presented no evidence of an intervening event or a lapse in time during Defendant's encounter with Victim, nor was there evidence that the sexual abuse involved multiple victims or more than one motive. In the absence of any evidence that Defendant's conduct was distinct, we conclude that Defendant's convictions violate his right to be free from double jeopardy, and we remand to the district court to vacate one of Defendant's convictions for CSCM.

## II.     Prior Allegations of Sexual Abuse

{11}     Defendant argues that the district court erred by limiting his ability to cross-examine Victim regarding a prior sexual abuse allegation she had made against her grandfather. Defendant claims that the district court's ruling violated his rights under the Confrontation Clause and his "constitutional right to present a complete defense." [3]

{12}     We review the district court's evidentiary decision for abuse of discretion. *See State v Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72 ("We review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of clear abuse."). To the extent that the issues presented require us to interpret questions of law concerning the Confrontation Clause, we do so de novo. *State v. Montoya*, 2014-NMSC-032, ¶ 16, 333 P.3d 935.

{13}     New Mexico's rape shield law, NMSA 1978, § 30-9-16 (1993), reflects our state's public policy of "prevent[ing] unwarranted intrusions into the private affairs of the victims of sex crimes." *State v. Romero*, 1980-NMCA-011, ¶ 21, 94 N.M. 22, 606 P.2d 1116, *overruled in part on other grounds by State v. Johnson*, 1997-NMSC-036, ¶ 34, 123 N.M. 640, 944 P.2d 869. The rape shield law is "not limited to sex by consent, rather, its unlimited wording applies to all sexual conduct." *Johnson*, 1997-NMSC-036, ¶ 19 (internal quotation marks and citation omitted). A victim's "sexual conduct" under the rape shield law is inclusive of a victim's prior allegations of sex abuse. *See State v. Payton*, 2007-NMCA-110, ¶¶ 6, 10, 142 N.M. 385, 165 P.3d 1161; *see also State v. Garcia*, 2013-NMCA-064, ¶¶ 6, 33-34, 302 P.3d 111 (stating that Rule 11-412 NMRA governs the district court's determination of the admissibility of "records related to allegations of [sexual] abuse by [a v]ictim").

{14}     Rule 11-412(A)(1) provides that "evidence offered to prove that a victim engaged in other sexual behavior" is generally not admissible in a criminal proceeding involving alleged sexual misconduct. The rule prevents the district court from admitting evidence related to Victim's "past sexual conduct" unless "the evidence [was] material to the case

---

3Defendant contends the district court abused its discretion by prohibiting Defendant from arguing to the jury in closing that since two counts of CSCM were dismissed on Defendant's motion for directed verdict, "[Victim] made allegations that she could not prove." Defendant has not cited any relevant legal authority for the proposition that a court abuses its discretion by prohibiting a party from arguing about inferences from a directed verdict. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). As such, we decline to address the issue further.

and . . . its inflammatory or prejudicial nature [did] not outweigh its probative value." *Johnson*, 1997-NMSC-036, ¶ 18 (quoting a previous version of the statute but concluding that Rule 11-412 is "consistent with" Section 30-9-16). "Just as the Confrontation Clause does not give a defendant an absolute right to cross-examine a witness, rape shield laws do not act as absolute prohibitions to the admission of an alleged victim's sexual history." *State v. Stephen F.* (*Stephen F. II*), 2008-NMSC-037, ¶ 7, 144 N.M. 360, 188 P.3d 84. If there is a conflict between the applicability of the rape shield law or rule and the right to confront witnesses, the statute and rule must yield. *Id.* ¶ 6. When the court is tasked with deciding between the competing interests presented by the rape shield law and the Confrontation Clause, a defendant's theory of relevance is of "paramount importance." *See Montoya*, 2014-NMSC-032, ¶ 29. The court must determine whether the defendant "presented sufficient facts to support a theory of relevance implicating his constitutional right to confrontation." *Id.*

**{15}** Our Supreme Court has established "a five-factor framework to aid the court in determining whether the defendant has adequately established his [or her] theory of relevance." *Stephen F. II*, 2008-NMSC-037, ¶ 8. Under this framework, the district court determines:

> (1) whether there is a clear showing that the complainant committed the prior acts; (2) whether the circumstances of the prior acts closely resemble those of the present case; (3) whether the prior acts are clearly relevant to a material issue, such as identity, intent, or bias; (4) whether the evidence is necessary to the defendant's case; and (5) whether the probative value of the evidence outweighs its prejudicial effect.

*Id.* (quoting *Johnson*, 1997-NMSC-036, ¶ 27). "[A] showing sufficient under this framework establishes a constitutional right to present evidence otherwise excluded by our [rule]." *Id.* (alteration, internal quotation marks, and citation omitted).

**{16}** First, we determine whether there was a clear showing at the trial level that the "complainant committed the prior acts" or in this case whether the prior instance of sexual abuse occurred. *See Johnson*, 1997-NMSC-036, ¶ 27; *see also Payton*, 2007-NMCA-110, ¶¶ 12-16 (applying the *Johnson* factors in a case involving a prior allegation of sexual abuse). Victim testified that while living in Kentucky as a seven-year-old, her grandfather touched her in a sexually inappropriate manner. According to Victim, the encounter occurred at night while her sister was present in an adjacent room. Victim stated that her grandfather "was drinking and smoking" while he touched her in the area of her body where a "bikini bathing suit would cover." During the in-camera hearing, Victim openly testified that the prior allegation occurred. Although there was no evidence presented that the prior allegation was adjudicated, we have previously held that a victim's confirmation of prior sexual conduct suffices under the first *Johnson* factor. *See State v. Stephen F.* (*Stephen F. I*), 2008-NMSC-037, ¶ 13, 141 N.M. 199, 152 P.3d 842 (stating that the first *Johnson* factor was met because the victim openly discussed the prior sexual conduct to the defense), *aff'd Stephen F. II*, 2008-NMSC-037, ¶ 43; *see also Payton*, 2007-NMCA-110, ¶ 14 (concluding that the first *Johnson*

factor was met because the state did not contest the validity of the prior sexual abuse allegation but rather its admissibility). Here, the State does not contest the validity of Victim's prior allegation. As such, the first factor is met.

**{17}** Second, we consider whether the circumstances of the prior acts closely resemble those of the present case. *See Johnson*, 1997-NMSC-036, ¶ 27. In this case, Defendant argues that the allegations in this case and the allegations against Victim's grandfather were "against a close relative," and that in both instances Victim alleged "that the offense happened at night with another girl in the same room, [and involved the] presence of alcohol, cigarette smoking, [and] touching an identical body part." We agree that the factual allegations against Victim's grandfather resemble the facts of this case in some respects—both involved an adult male, occurred at night, and Victim observed that the perpetrators were using alcohol and tobacco in both instances. Nevertheless, there are important distinctions. First, the alleged CSCM in this case was not perpetrated by a relative. Second, K.O. was in the same room and in the same bed as Victim, not in an adjacent room. Last, Victim testified that she was uncertain whether Defendant touched her vagina and instead described that Defendant put his leg over her and touched her buttocks and "in between her [buttocks] cheeks." This description is dissimilar to the description of where and how her grandfather sexually abused her. On balance, the two incidences of sexual abuse were sufficiently distinct.

**{18}** Third, we address whether the prior sexual abuse allegations were relevant to a material issue. *See id.* (considering such material issues such as "identity, intent, or bias"). Defendant's theory of the case is that Victim conflated the events involving Defendant with the previous incident involving her grandfather. He justifies his theory of relevance by arguing that Victim is "hypersensitive" to "being around men" and suffered from PTSD and depression. Accordingly, Defendant contends that Victim's prior allegations against her grandfather, and Defendant's ability to cross-examine her about such allegations are "relevant to [Victim's] misunderstanding of [Defendant's] acts."

**{19}** We addressed similar arguments in *State v. Hueglin*, wherein the defendant argued that a prior sexual assault allegation was relevant evidence because the victim "was somehow recalling the violence of that rape and applying it to her encounter with [the defendant]." 2000-NMCA-106, ¶ 26, 130 N.M. 54, 16 P.3d 1113 (alteration and internal quotation marks omitted). There, the defendant failed to elicit any form of expert testimony to substantiate his claims that the previous assault affected the current allegation. *Id.* In the absence of expert testimony, we concluded that the defendant "would have been inviting the jury to engage in speculation based on lay psychology." *Id.* Here, as in *Hueglin*, Defendant did not present any form of expert testimony to validate his claims that Victim was hypersensitive or that her mental health conditions influenced her ability to assess the circumstances of the present incident with Defendant. We reject Defendant's argument that the "jury gets to determine whether or not [Victim is] hypersensitive[.]" Without expert testimony, Defendant would have impermissibly invited the jury to speculate on claims, proof of which require the aid of expert testimony. *See id.* And no other evidence supports Defendant's argument that Victim conflated the two alleged instances of sexual contact. All of the evidence is to the

contrary. Victim testified during the in-camera hearing that "[t]hey're two separate incidents and they happened years apart." When the State inquired whether Victim ever confuses the two incidents or ever mixes them up, Victim responded unequivocally, "No." While Defendant had the opportunity to do so during the in-camera hearing, Defendant did not make further inquiry into whether Victim confused the two incidents and does not direct our attention to anywhere in the record where Victim testified that the prior allegation influenced her or that she confused it with the current allegation. We agree with the district court that Defendant failed to meet his burden to establish relevancy.

{20}    Fourth, we consider Defendant's argument that Victim's prior sexual abuse allegation was "at the heart of [Defendant's] defense" because it demonstrated that Victim "was not telling the truth because she was mistaken." In some instances, prior sexual conduct may be necessary to a defense, yet our case law is consistent in that a defendant must first establish *relevancy* before demonstrating that the evidence was necessary. *See Payton*, 2007-NMCA-110, ¶ 15 (stating that evidence of a prior sexual abuse allegation was admissible because it was relevant to the victim's sexual knowledge); *see also Stephen F. I*, 2007-NMCA-025, ¶ 16 (stating that prior sexual conduct was admissible because it was *relevant* to demonstrate the victim's motive to lie). Defendant failed to establish that the proposed evidence was relevant, which in turn precluded him from meeting his burden of demonstrating that the prior sexual abuse allegations were necessary to his defense. *See* Rule 11-402 NMRA ("Irrelevant evidence is not admissible."); *Stephen F. II*, 2008-NMSC-037, ¶ 7 ("[The] defendant must show sufficient facts to support a particular theory of relevance to enable the [district] court to competently assess the constitutional significance of that theory." (internal quotation marks and citation omitted)).

{21}    We also need not consider the fifth *Johnson* factor—whether the probative value of the evidence outweighs its prejudicial effect—because Defendant failed to establish that the prior allegation was relevant. *See Johnson*, 1997-NMSC-036, ¶ 27 (setting out the fifth factor as "whether the probative value of the evidence outweighs its prejudicial effect"); *see also* Rule 11-412(B) ("The court may admit evidence of the victim's past sexual conduct that is material and *relevant* to the case[.]" (emphasis added)). We conclude Defendant never articulated a constitutionally relevant theory of defense sufficient to allow him to admit evidence of Victim's previous sexual abuse allegation, and accordingly, we hold that the district court did not err by excluding such evidence.

**CONCLUSION**

{22}    For the foregoing reasons, we reverse one of Defendant's CSCM convictions and remand to the district court to vacate the conviction but otherwise affirm.

{23}    **IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**ZACHARY A. IVES, Judge**