2008-NMSC-037

188 P.3d 84

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**STEPHEN F., a child, Defendant–Respondent.**

No. 30,199.

Supreme Court of New Mexico.

June 23, 2008.

Gary K. King, Attorney General, Jacqueline R. Medina, Assistant Attorney General, Santa Fe, NM, for Petitioner.

Hugh Dangler, Chief Public Defender, Vicki W. Zelle, Assistant Appellant Defender, Santa Fe, NM, for Respondent.

## OPINION

BOSSON, Justice.

{1} This appeal implicates two competing interests—an accused's constitutional right to confront witnesses against him, and the State's interest, as expressed in our rape shield statute and corresponding rule of evidence, in protecting those witnesses from unwarranted intrusions on their privacy. The Court of Appeals concluded that the accused in this case, Stephen F., had a constitutional right to cross-examine the alleged rape victim, B.G., about a prior sexual incident—and the punishment she received from her parents as a result—to establish a motive to fabricate the present charges against him. We agree. Because the trial court unfairly restricted his constitutional right to confront the sole witness against him, we reverse and remand for a new trial.

## BACKGROUND

{2} On the night in question, Stephen F., who was then fifteen, and B.G., who was sixteen, engaged in sexual intercourse. Stephen, a long-time friend of B.G.'s brother, was spending the night at her family's house, as he often did. B.G., Stephen, and her brother shared an alcoholic beverage while they watched a movie in her bedroom. After initially leaving her bedroom to sleep on the living room couch, Stephen came back to her room and, according to B.G., forced her to engage in oral, vaginal, and anal sex. Stephen then left her room, and spent the rest of the night in the living room. In the morning, B.G. told her mother that Stephen had raped her.

{3} There is no dispute that Stephen and B.G. engaged in sexual intercourse. Stephen's sole defense was that B.G. consented, and then fabricated the rape allegation to avoid being punished by her parents. Stephen based his defense on B.G.'s deposition testimony. During the deposition, B.G. explained that her parents are opposed to premarital sex because of their deeply held religious convictions. Significantly, B.G. also explained that she had previously been punished when her parents learned from her brother that she had engaged in consensual sex with someone else. To establish a motive to lie about the present event, Stephen wanted to cross-examine B.G. about this prior incident.

{4} Stephen requested a hearing pursuant to Rule 11–413 NMRA, "**Sex crimes; testimony; limitations; in camera hearing,**" to

determine the admissibility of his proffered evidence. Rule 11–413 provides:

> A. **Evidence of the victim's past sexual conduct.** In prosecutions under Sections 30–9–11 to 30–9–15 NMSA 1978, evidence of the victim's past sexual conduct, opinion evidence thereof or of reputation for past sexual conduct shall not be admitted unless, and only to the extent that the court finds, that evidence of the victim's past sexual conduct is material and relevant to the case and that its inflammatory or prejudicial nature does not outweigh its probative value.
>
> B. **Pretrial motion required.** If such evidence is proposed to be offered, the defendant must file a written motion prior to trial. The court shall hear such pretrial motion prior to trial at an in camera hearing to determine whether such evidence is admissible under Paragraph A of this rule.... If such proposed evidence is deemed admissible, the court shall issue a written order stating what evidence may be introduced by the defendant and stating the specific questions to be permitted.

*See also* NMSA 1978, § 30–9–16 (1993) (New Mexico's rape shield statute).

{5} The trial court held a pre-trial hearing on Stephen's motion. Stephen argued that he had a right under the Sixth Amendment to the United States Constitution, and under Article II, Section 14 of the New Mexico Constitution, to cross-examine B.G., and reveal her motive to lie. The trial court, after denying Stephen's motion for an in camera hearing, prohibited Stephen from cross-examining B.G. or any other witness, such as her parents, about the prior sexual encounter, finding "specifically that the prejudicial aspects of this would greatly outweigh the probative value." The trial court explicitly chose not to address Stephen's Sixth Amendment argument. The Court of Appeals, analyzing the issue under Stephen's Sixth Amendment constitutional right to confront witnesses, reversed the trial court and remanded for a new trial. *State v. Stephen F.*, 2007–NMCA–025, ¶¶ 13–18, 22, 141 N.M. 199, 152 P.3d 842.

## DISCUSSION

{6} This Court has previously acknowledged that "[i]f application of the rape shield law or rule would conflict with the accused's confrontation right, if it operates to preclude the defendant from presenting a full and fair defense, the statute and rule must yield." *State v. Johnson*, 1997–NMSC–036, ¶ 24, 123 N.M. 640, 944 P.2d 869; *see also Rock v. Arkansas*, 483 U.S. 44, 55, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) ("[W]hen a state rule of evidence conflicts with the right [of the accused] to present witnesses, the rule may 'not be applied mechanistically to defeat the ends of justice,' but must meet the fundamental standards of due process." (quoting *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973))). A defendant's "right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers*, 410 U.S. at 295, 93 S.Ct. 1038. However, a court's decision to restrict a defendant's ability to confront a witness, even when based on legitimate state interests, "calls into question the ultimate integrity of the fact-finding process and requires that the competing interest be closely examined." *Id.* (quoted authority omitted).

{7} Just as the Confrontation Clause does not give a defendant an absolute right to cross-examine a witness, rape shield laws do not act as absolute prohibitions to the admission of an alleged victim's sexual history. The goal of a rape shield statute is " 'to emphasize the general irrelevance of a victim's sexual history, not to remove relevant evidence from the jury's consideration.' " *Johnson*, 1997–NMSC–036, ¶ 21, 123 N.M. 640, 944 P.2d 869 (quoting *State v. Crims*, 540 N.W.2d 860, 867 (Minn.Ct.App. 1995)). Thus, "[a] defendant's right of confrontation—with its protection of the right to cross-examine, test credibility, detect bias, and otherwise challenge an opposing version of facts—is a *critical limitation* on the trial court's discretion to exclude evidence a defendant wishes to admit." *Id.* ¶ 23 (emphasis added). Under our statute and rule of evidence, "a defendant must show sufficient facts to support a particular theory of rele-

vance" to enable the trial court to competently assess the constitutional significance of that theory. *Id.* ¶ 32.

{8} In *Johnson*, this Court suggested a five-factor framework to aid the court in determining whether the defendant has adequately established his theory of relevance. *Id.* ¶¶ 27–28. The five factors are:

(1) whether there is a clear showing that the complainant committed the prior acts;

(2) whether the circumstances of the prior acts closely resemble those of the present case;

(3) whether the prior acts are clearly relevant to a material issue, such as identity, intent, or bias;

(4) whether the evidence is necessary to the defendant's case; and

(5) whether the probative value of the evidence outweighs its prejudicial effect.

*Id.* ¶ 27. We held "that a showing sufficient under [this framework] establishes a constitutional right to present evidence otherwise excluded by our statute." *Id.* ¶ 28; *see also* Haviva A. Graber, Note, *Evidence Law— Striking the Right Balance in New Mexico's Rape Shield Law—State v. Johnson*, 28 N.M. L.Rev. 611, 611 (1998) ("The [*Johnson*] guidelines reflect the policy behind the enactment of the New Mexico rape shield law as well as the constitutional limits on that protection."). We specifically noted, however, that we did "not intend to limit the trial courts in the exercise of discretion under the rule and statute, but rather to suggest a possible framework for exercising that discretion." *Johnson*, 1997–NMSC–036, ¶ 28, 123 N.M. 640, 944 P.2d 869. A district court's decision to exclude evidence of a victim's prior sexual conduct is reviewed for abuse of discretion. *See id.* ¶ 40. We now evaluate the trial court's exercise of discretion in this case using the guidelines this Court set forth in *Johnson*.

**Stephen Established a Constitutional Right to Cross–Examine B.G.**

{9} Stephen argues that his inability to cross-examine B.G. about her motive to lie "offend[ed][his] right to meaningful confrontation of the state's primary witness against him, as well as his right to due process," because the evidence he sought to introduce was relevant to Stephen's defense that he and B.G. had engaged in consensual sex. Relying appropriately on the *Johnson* factors, the Court of Appeals held that Stephen had a constitutional right to cross-examine B.G. *Stephen F.*, 2007–NMCA–025, ¶¶ 13–18, 141 N.M. 199, 152 P.3d 842.

{10} The State argues that the Court of Appeals erred because Stephen did not demonstrate that the testimony he sought to introduce through cross-examination implicated his constitutional right of confrontation. The State contends that Stephen did not "demonstrate that the evidence [was] material to his right of confrontation and that its prejudicial effect ... outweigh[ed] its probative value." The State faults the Court of Appeals for its analysis of factors two through five of the *Johnson* test. We limit our review to those four factors.

{11} The State suggests that Stephen could not meet the requirements of the second factor, "whether the circumstances of the prior acts closely resemble those of the present case," because he could not show that the circumstances of B.G.'s prior consensual sexual encounter closely resembled the sexual act between Stephen and B.G. The State correctly points out "that the victim's prior consensual conduct with her boyfriend did not at all resemble the circumstances of her rape in the present case." The State acknowledges that the *Johnson* Court's "five-factor analysis was suggested only as a framework for the trial courts in the exercise of their discretion." The State nevertheless faults the Court of Appeals for concluding that the second prong need not apply in this case, because the Court "dismiss[ed] the relevance of a factor that supports the conclusion reached by the trial court."

{12} We conclude that the Court of Appeals correctly held that the second factor does not apply in this case. *Stephen F.*, 2007–NMCA–025, ¶ 14, 141 N.M. 199, 152 P.3d 842. A comparison of the details of B.G.'s prior sexual encounter with the details of the alleged rape is simply not relevant to Stephen's theory that B.G. fabricated the allegation because she feared being punished

by her parents. Stephen's theory of the case is not that B.G. willingly engaged in a sex act with her boyfriend and therefore she willingly engaged in a similar sex act with Stephen. Instead, his theory is that she fabricated the rape charge because she did not want to be punished, and her fear of parental punishment arises from the mere fact of engaging in premarital sex, not from any purported similarity between the type of premarital sex. *See id.*

{13} Not only are the details about the nature of B.G.'s prior sex acts with her boyfriend not relevant to Stephen's theory of his defense, admission of those details would run afoul of our rape shield law. If Stephen attempted to introduce evidence about the nature of her consensual sexual encounter with her boyfriend, as the State suggests he must, Stephen would be attempting to introduce evidence about B.G.'s prior sexual encounter only to show propensity. This evidence is just the type of evidence that the rape shield laws were designed to prohibit— evidence of a victim's lack of chastity. *See Johnson*, 1997–NMSC–036, ¶ 40, 123 N.M. 640, 944 P.2d 869.

◼ {14} The Court of Appeals also concluded that the second factor need not apply because the *Johnson* Court only intended the factors to be guidelines, not rigid requirements. *Stephen F.*, 2007–NMCA–025, ¶ 14, 141 N.M. 199, 152 P.3d 842. We agree. Stephen's inability to meet the second factor is not fatal to his claim because the five factors simply assist a trial court in exercising discretion. *See Johnson*, 1997–NMSC–036, ¶ 28, 123 N.M. 640, 944 P.2d 869 ("We do not intend to limit the trial courts in the exercise of discretion under the rule and statute, but rather to suggest a possible framework for exercising that discretion."). A trial court should consider the rationale underlying the five-factor framework, i.e., whether the application of a particular factor assists the trial court in assessing whether the defendant's proffered testimony is constitutionally required, when determining which factors apply.

{15} We acknowledge that in other contexts courts have held that a defendant's failure to meet the second prong was fatal to the defendant's Confrontation Clause claim. But those courts have required that the second prong be met when it is *relevant* to the defendant's theory of the case. For example, courts in states with statutory schemes similar to New Mexico's have adopted the five-factor framework to determine when evidence of a child's prior sexual encounters is admissible to prove knowledge. *See, e.g., State v. Townsend*, 366 Ark. 152, 233 S.W.3d 680, 685 (2006) (adopting the five-factor framework but limiting its application to those cases where the court is "ruling on the admissibility of a child's previous sexual experiences"); *State v. Budis*, 125 N.J. 519, 593 A.2d 784, 790 (1991); *Hale v. State*, 140 S.W.3d 381, 396 (Tx.Ct.App.2004). In *Townsend* the court described the particular relevancy of a child's description of prior sexual encounters in such cases and noted that "[t]he similarity requirement makes it more likely that the sexual *knowledge* displayed by a victim in one case was actually derived from a prior encounter, and that assumption is essential to the defendant's argument in these situations." *Id.* (emphasis added). B.G.'s sexual knowledge has no bearing on Stephen's need for confrontation in this case.

{16} Similarly, in cases where consent is a defense based on the victim's alleged acts of prostitution, factor two may be relevant. For example, "a defendant may show that a victim has engaged in a distinctive pattern of past sexual conduct, involving the extortion of money by threat after acts of prostitution, of which her alleged conduct in [a particular case] is but an example." *Johnson*, 1997–NMSC–036, ¶ 33, 123 N.M. 640, 944 P.2d 869 (alteration in original) (quoted authority omitted). However, even when a defendant attempts to introduce evidence about a prostitute's past pattern of conduct to support an inference that she consented to have sex with him, it is not the similarity between the sexual acts that is important, but the circumstances surrounding the sexual encounter. *Id.* ("Simply showing that the victim engaged in an act or acts of prostitution is not sufficient to show a motive to fabricate.").

{17} Thus, under certain circumstances, the second factor may be of use to the trial court when it is evaluating the relevancy of

an accused's proffered evidence. However, those circumstances are not present here. Because the second prong is not relevant to Stephen's defense, this factor should not weigh in favor of either admissibility or inadmissibility. It is simply of no weight at all.

{18} The State next argues that the Court of Appeals erred when it held that the third factor, "whether the prior acts are clearly relevant to a material issue, such as identity, intent,· or bias," weighed in favor of allowing Stephen to cross-examine B.G. While the State agrees that "motive to lie" is a theory of relevance that may implicate a defendant's constitutional right, in this case Stephen failed to demonstrate facts upon which his theory was based. The State suggests that the only evidence that would support Stephen's theory is evidence that B.G.'s mother found out about the sexual encounter, and B.G. knew that her mother was going to confront her about it and then punish her. Because B.G. told her mother immediately about the alleged rape, rather than being confronted about the rape, the State contends that the facts do not support Stephen's theory.

{19} We are not persuaded. Stephen demonstrated that B.G.'s prior sexual encounter, and the resulting punishment, was relevant to bias, a material issue. The third factor, "whether the prior acts are clearly relevant to a material issue, such as identity, intent, or bias," is designed to help the court determine the relevancy of defendant's theory. Not only was B.G.'s motive to lie relevant to show her possible bias, it was central to Stephen's defense that B.G. consented. The spontaneous nature of B.G.'s admission does not diminish the relevancy or the necessity of Stephen's theory that B.G. was motivated by her fear of punishment to lie to her mother. Instead, the conflicting meanings ascribed to B.G.'s admission present a classic jury question—evaluating the credibility of a witness. In denying Stephen the opportunity to cross-examine B.G., the trial court prohibited Stephen from "expos[ing] to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Davis v. Alaska,* 415 U.S. 308, 318, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

{20} The State further argues that Stephen did not adequately demonstrate that his ability to cross-examine B.G. was "necessary to [his] case," as required by the fourth *Johnson* factor. The State suggests that Stephen could have taken the stand in his defense and testified, giving the jury an alternate version of the facts to consider. Additionally, the trial court allowed Stephen the opportunity to attempt to cross-examine B.G. regarding her religious beliefs, subject to any objections about relevance. Therefore, the State contends that the trial court did not "strip [Stephen] of his only defense."

{21} Despite the trial court's decision to allow Stephen to question B.G. and her family about their religious convictions, defense counsel did not do so. By limiting Stephen's cross-examination to B.G.'s religious convictions, the trial court effectively foreclosed Stephen's ability to establish a motive for B.G. to fabricate the rape allegation. To establish that motive, Stephen needed to show that B.G. had a reason to fear punishment. To do so, it was necessary that Stephen have the ability to impeach B.G. with her deposition testimony that she had been punished previously. Without the aid of her deposition testimony, and because he was limited to questioning B.G. solely about her family's religious convictions, Stephen's argument that B.G. had a motive to lie became groundless and ineffective.

{22} The trial court's refusal to allow Stephen to question B.G. about her motive to lie infringed on his right to effective cross-examination. Our conclusion is supported by *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347, where the U.S. Supreme Court analyzed the Alaska Supreme Court's review of a similar ruling by a trial court. In *Davis,* the Alaska Supreme Court upheld a trial court ruling that the defendant was prohibited from cross-examining the State's key witness about his juvenile record. *Id.* at 311, 94 S.Ct. 1105. Just as in the instant appeal, the trial court allowed the defendant to question the witness about his bias toward the state, but without the benefit of backing up the defendant's theory of bias with the

witness's juvenile record. *Id.* at 311–12, 94 S.Ct. 1105. The U.S. Supreme Court concluded that the limited cross-examination that the court permitted ran afoul of the defendant's constitutional right to confront witnesses against him. *Id.* at 318, 94 S.Ct. 1105.

{23} In overruling the Alaska Supreme Court, the U.S. Supreme Court focused not just on the defendant's right to cross-examine the witness, but on whether that right was "effective." *Id.* The Court noted that the defendant was able to question the witness about whether he was biased toward the state, but the witness "denied that he was upset or uncomfortable.... He claimed not to have been worried about any suspicions the police might have been expected to harbor against him." *Id.* at 312, 94 S.Ct. 1105. Defense counsel was unable to confront the witness with his juvenile record for burglary because of the trial court's ruling, and therefore, the witness's "protestations of unconcern ... and his categorical denial of ever having been the subject of any similar law-enforcement interrogation went *unchallenged.*" *Id.* at 313–14, 94 S.Ct. 1105 (emphasis added). The Court concluded that "[o]n these facts it seems clear to us that *to make any such inquiry effective,* defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Id.* (emphasis added) (quoted authority omitted).

{24} Similarly, in this case, had B.G. denied that she lied about having consensual sex with Stephen because of her fear that her parents would punish her, her statement might have gone unchallenged and the jury might not have had the information necessary to properly evaluate her credibility. Instead, to ensure that Stephen had the opportunity to *effectively* cross-examine B.G., he should have been allowed to challenge B.G.'s allegation that he raped her. He could only do so with her testimony and the testimony of her parents about the consequences that resulted from her prior consensual sexual experience. By prohibiting Stephen from so doing, the trial court deprived the jury of

vital information and had the effect of stripping Stephen of his only defense.

{25} Finally, the State contends that the Court of Appeals incorrectly concluded that the probative value of the evidence of B.G.'s motive to lie outweighed its prejudicial effect. Because the evidence had limited impeachment value, argues the State, the district court did not abuse its discretion when it prohibited Stephen from cross-examining B.G. after weighing the probative value of the evidence against its prejudicial effect.

{26} We disagree. Although the trial court balanced the competing interests present in this case, it failed to accord proper weight to Stephen's constitutional right. During the pre-trial hearing Stephen expressed his concern that jurors, if left uninformed about B.G.'s past punishment, would wonder why B.G. would have lied to her parents in this instance. Stephen explained that the evidence he sought to admit would only be used to provide the jury with an explanation for B.G.'s actions, not as propensity evidence. The trial court expressed its concern that Stephen's proffered evidence might unintentionally have the effect of propensity evidence, stating: "I understand fully your statement that is not your intent, and you so state, but is that in fact the result? Is that not the ... collateral damage that occurs?" The trial court refused to consider Stephen's Confrontation Clause claim stating, "I do not address [this claim] in terms suggested by counsel, that is, under the confrontation aspect but rather under the measure of prejudice versus probative value."

{27} The trial court was appropriately concerned that cross-examining B.G. about her prior consensual sexual encounter may inflict "collateral damage." A trial court, however, must

> consider the effect of excluding such evidence on defendant's right to a fair trial and balance that effect against the potential prejudice to the truthfinding process itself ... to determine whether the introduction of the victim's past sexual conduct may confuse the issues, mislead the jury, or cause the jury to decide the case on an improper or emotional basis.

*Johnson,* 1997–NMSC–036, ¶ 25, 123 N.M. 640, 944 P.2d 869 (alteration in original) (quoted authority omitted). While the trial court has the discretion to limit or even exclude such testimony, if the cross-examination is cumulative or only marginally relevant, or to protect against certain legitimate concerns, such as undue harassment, prejudice, or confusion of the issues, the trial court's decision to do so must not be "arbitrary or disproportionate to the purposes they are designed to serve." *Rock,* 483 U.S. at 56, 107 S.Ct. 2704. The court's decision to exclude Stephen's proffered evidence must be closely examined because its decision to do so, even if based on legitimate state interests, "calls into question the ultimate integrity of the fact-finding process." *Chambers,* 410 U.S. at 295, 93 S.Ct. 1038 (quoted authority omitted). And, unless the State's interest in excluding the evidence in this case outweighs Stephen's constitutional right, the State's interest must give way. *See Davis,* 415 U.S. at 319, 94 S.Ct. 1105.

{28} In this case, the State's interest in applying the rape shield statute to protect B.G.'s privacy, while important, is outweighed by Stephen's right of confrontation under the Sixth Amendment. Stephen's cross-examination of B.G. was simply not the type of evidence that the rape shield law was designed to prohibit. As previously explained, Stephen was not attempting to introduce the evidence for an improper motive; Stephen was not attempting to prove the "forbidden 'yes/yes inference'"—that because B.G. had consented before she must have consented now. *See Johnson,* 1997–NMSC–036, ¶ 33, 123 N.M. 640, 944 P.2d 869 (explaining that "[a] defendant must specify the issue or issues the evidence is intended to address and demonstrate how the evidence is truly probative on those issues exclusive of the forbidden 'yes/yes inference.'" (quoted authority omitted)). Further, because the evidence was limited to the *punishment* that resulted from the previous consensual sexual encounter, not the details about the sexual acts, it is less likely that the evidence would "confuse the issues, mislead the jury, or cause the jury to decide the case on an improper or emotional basis." *See id.* ¶ 25 (quoted authority omitted).

{29} Finally, having acknowledged the valid concern about the potential collateral damage to B.G., we must also acknowledge that cross-examination, by its very nature, is rarely without some collateral consequences. Effective cross-examination is often confrontational, though the trial court can use its discretion to prevent unfair harm. Thus, when ruling on the admissibility of a defendant's proffered evidence of a victim's prior sexual encounter, a trial court must assure itself that it is only acting to protect against *unnecessary* collateral consequences, not those that necessarily flow from the process itself.

{30} In this case, the trial court could have protected B.G. from cross-examination designed only to unduly harass her or intrude unnecessarily on her personal life, while still allowing Stephen to question B.G. about her motive to lie. Our statute authorizes the trial court to impose limitations on the defendant's ability to cross-examine a witness and requires the court to "issue a written order stating what evidence may be introduced by the defendant and stating the specific questions to be permitted." Section 30–9–16(C). That the trial court could have tailored the cross-examination to protect B.G. undercuts the rationale for what we see as an overly broad and unnecessary ruling, which prohibited Stephen from questioning B.G. about her previous punishment.

{31} Conversely, the effect that excluding the evidence had on Stephen's constitutional rights weighs in favor of admissibility. Stephen wanted to alert the jury to B.G.'s motive to lie, and impeach her credibility. It is just this type of evidence—motive, bias, and credibility—that the Confrontation Clause seeks to protect. *See Johnson,* 1997–NMSC–036, ¶ 23, 123 N.M. 640, 944 P.2d 869 ("A defendant's right of confrontation—with its protection of the right to cross-examine, test credibility, detect bias, and otherwise challenge an opposing version of facts—is a critical limitation on the trial court's discretion to exclude evidence a defendant wishes to admit."). Further, the testimony that Stephen sought to elicit was central to his case. His sole defense was that B.G. consented to

have sex with him, which hinged on the jury's evaluation of B.G.'s credibility. *See State v. DeLawder*, 28 Md.App. 212, 344 A.2d 446, 454 (Ct.Spec.App.1975) ("The accuracy and truthfulness of the prosecutrix's testimony . . . were key elements in the State's case against [the defendant]. In fact, its case depended entirely on her veracity.").

{32} *Olden v. Kentucky* further supports our conclusion that the trial court's refusal to allow Stephen to cross-examine B.G. was unreasonable. 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988) (per curiam). In *Olden*, the U.S. Supreme Court reviewed the tension between a defendant's right to cross-examine the alleged rape victim about her motive to lie and the trial court's discretion in refusing to allow that line of questioning. *Id.* As with Stephen, the defendant's defense was consent—he argued that the victim fabricated the rape allegation because she needed to explain herself to her boyfriend. *Id.*

{33} The Kentucky Court of Appeals, after concluding that the evidence was not barred by the rape shield statute, and that the evidence was relevant, nevertheless refused to allow the cross-examination. *Id.* at 231, 109 S.Ct. 480. The court feared the unfairly prejudicial effect of the cross-examination on the victim because the questioning would have revealed that the victim and her boyfriend, an interracial couple, were living together. *Id.* at 230–31, 109 S.Ct. 480.

{34} The U.S. Supreme Court, relying on *Davis*, concluded that the Kentucky court "failed to accord proper weight to petitioner's Sixth Amendment right to be confronted with the witnesses against him." *Id.* at 231, 109 S.Ct. 480 (internal quotation marks omitted). The U.S. Supreme Court found it significant that the Kentucky court weighed the probative value of the defendant's proffered evidence against its prejudicial effect "without acknowledging the significance of, or even adverting to, petitioner's constitutional right to confrontation." *Id.* at 232, 109 S.Ct. 480. While reiterating that a trial court has the discretion to "impose *reasonable limits* on defense counsel's inquiry into the potential bias of a prosecution witness," the Court regarded the Kentucky court's limitation "beyond reason." *Id.* (emphasis added). "Spec-

ulation as to the effect of jurors' racial biases cannot justify exclusion of cross-examination with such strong potential to demonstrate the falsity of [the victim's] testimony." *Id.*

{35} In the instant case, as in *Olden*, the trial court did not accord adequate weight to Stephen's Sixth Amendment claim. The trial court's concern about the collateral damage that B.G. might suffer does not "justify exclusion of cross-examination with such strong potential to demonstrate the falsity of [B.G.'s] testimony," and was, therefore, "beyond reason." *Id.*

◼ {36} The reasoning of rape shield cases from other jurisdictions also supports our holding. *See, e.g., Commonwealth v. Stockhammer*, 409 Mass. 867, 570 N.E.2d 992 (1991); *DeLawder*, 28 Md.App. 212, 344 A.2d 446; *see also*, Jason M. Price, Note, *Constitutional Law—Sex, Lies and Rape Shield Statutes: The Constitutionality of Interpreting Rape Shield Statutes to Exclude Evidence Relating to the Victim's Motive to Fabricate*, 18 W. New Eng. L.Rev. 541, 555 n. 100 (1996) (collecting cases where "courts have confronted the issue of the accused's right to present relevant testimony about the victim's sexual history as it relates to the victim's motive to fabricate sexual assault charges"). From these cases, we conclude that a defendant's right to cross-examine a witness against him must be analyzed on a case-by-case basis. The defendant must establish a valid theory of relevance and must support that theory with adequate facts showing a nexus between his proffered evidence and his theory. If the defendant meets that burden, as Stephen did in this case, the court must consider the defendant's Sixth Amendment right to cross-examine the witness. If the trial court fails to do so, it has abused its discretion.

{37} Despite the adequacy of Stephen's showing that his constitutional rights were implicated by B.G.'s testimony, the trial court nevertheless concluded that the prejudicial effect of Stephen's proffered testimony outweighed its probative value. Because the trial court failed to accord the proper weight to Stephen's constitutional right when it balanced the probative value of admitting evidence of B.G.'s past sexual encounter against

its prejudicial effect, we conclude that the trial court erred.

### The Trial Court Committed Reversible Error

{38} Having concluded that Stephen's Sixth Amendment right was violated, we must now determine whether reversal is warranted in this case. Confrontation Clause violations are subject to harmless error review. *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *State v. Johnson,* 2004–NMSC–029, ¶ 11, 136 N.M. 348, 98 P.3d 998. The State bears the burden of proving "that the constitutional error in this case was harmless beyond a reasonable doubt." *State v. Alvarez–Lopez,* 2004–NMSC–030, ¶ 25, 136 N.M. 309, 98 P.3d 699 (quoted authority omitted).

{39} Our courts have considered the following factors when reviewing for harmless error: " '[T]he importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.' " *Johnson,* 2004–NMSC–029, ¶ 11, 136 N.M. 348, 98 P.3d 998 (quoting *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. 1431). Significantly, a reviewing court should not be guided solely by the "overwhelming evidence of the defendant's guilt." *Id.* Instead, "the overall strength of the prosecution's case is but one factor in our harmless-error analysis. The central focus of the inquiry, for which the *Van Arsdall* factors are but a guide, is whether there is a reasonable possibility the erroneous evidence might have affected the jury's verdict." *Id.*

{40} In its discussion of the second *Johnson* factor, the State argues to this Court that the extent of B.G.'s physical injuries tends to negate Stephen's theory that B.G. actually consented to the sexual encounter and then fabricated the rape allegation. At trial, a registered nurse who conducted B.G.'s sexual assault examination testified about the nature and extent of B.G.'s injuries. The nurse testified that B.G. had several bruises and red spots on her back, legs, and arms. Additionally, B.G.'s vagina and rectum were torn, which the nurse explained was consistent with rape. B.G.'s family doctor and chiropractor also testified about the extent of her injuries.

{41} While B.G.'s injuries are consistent with her allegation of rape and certainly undermine Stephen's theory of the case, ultimately that is a question for the jury to decide. And we cannot overlook the fact that this case—like so many of its kind—boils down to a question of credibility. It is that very credibility that Stephen had a right to challenge by exposing B.G.'s motive to lie. While Stephen could have taken the stand and testified that B.G. consented, he was only able to introduce evidence of B.G.'s *motive to lie* through B.G. or her parents, and the trial court's ruling precluded him from so doing. We will not weigh the evidence in this case or decide that the physical injuries were so overwhelming that B.G. could never have consented. To do so would be contrary to our harmless error precedent: it would usurp the role of the jury, and would improperly deprive Stephen of his right to have his guilt or innocence decided by a fully informed jury.

{42} Instead, evidence tending to show that B.G. had a motive to lie about the rape allegation may have given some credence to Stephen's theory of consent. There is a reasonable possibility that the trial court's erroneous exclusion of Stephen's proffered evidence "might have affected the jury's verdict." *Johnson,* 2004–NMSC–029, ¶ 11, 136 N.M. 348, 98 P.3d 998. Therefore, we conclude that the trial court's refusal to allow Stephen to cross-examine B.G. about the punishment she received as a result of the prior sexual encounter was not harmless beyond a reasonable doubt.

### CONCLUSION

{43} We affirm the Court of Appeals and remand to the trial court for a new trial consistent with this Opinion.

{44} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PATRICIO M. SERNA, PETRA JIMENEZ MAES and CHARLES W. DANIELS, Justices.