This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

> Plaintiff-Appellee,

v.                                                           No. A-1-CA-33697

**OSCAR ARVIZO,**

> Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Briana H. Zamora, District Judge**

Hector H. Balderas, Attorney General
Olga Serafimova, Assistant Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**VARGAS, Judge.**

**{1}** Defendant appealed his convictions for criminal sexual contact of a minor (CSCM) in the second degree by a person in authority, CSCM in the third degree by a person in authority, pursuant to NMSA 1978, Section 30-9-13(B)(2)(a), (C)(2)(a) (2003), and intimidation of a witness, pursuant to NMSA 1978, Section 30-24-3(A)(3) (1997). Defendant raised the following issues: (1) the State violated his right to a speedy trial, (2) the State failed to present sufficient evidence to support his convictions for CSCM,

(3) the State failed to present sufficient evidence to support his conviction for intimidation of a witness, (4) the district court erred in excluding evidence under our rape shield rule, (5) the district court erred in limiting Defendant's impeachment of A.B., (6) the district court erred in permitting Dr. Renee Ornelas to testify regarding A.B.'s medical examination, (7) the district court erred in ordering an inadequate remedy for the destruction of evidence, (8) the State committed prosecutorial misconduct by referring to A.B. as a "victim" in its rebuttal argument, (9) the trial judge erred in recusing himself prior to sentencing without stating a basis for his recusal, and (10) cumulative error requires reversal.

**{2}** This Court previously considered the first three arguments and held that while the State presented sufficient evidence to support Defendant's conviction for intimidating a witness and did not violate Defendant's right to a speedy trial, it failed to present sufficient evidence to support his convictions for CSCM. *See State v. Arvizo* (*Arvizo I*), No. 33,697, 2016 WL 3970910, mem. op. ¶¶ 17, 24-25, 33, (N.M. Ct. App. June 11, 2016) (non-precedential). Given our holdings on these issues, we declined to address the remaining arguments. *Id.* ¶ 7. Our Supreme Court reversed, holding that the State presented sufficient evidence to support Defendant's convictions for CSCM, and reinstated Defendant's convictions for second and third-degree CSCM before remanding the case to this Court "to decide any remaining unaddressed appellate issues raised by [the d]efendant." *State v. Arvizo* (*Arvizo II*), 2018-NMSC-026, ¶ 25, 417 P.3d 384. We affirm.

**{3}** Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of the case, we reserve discussion of the pertinent facts within the context of Defendant's arguments.

**DISCUSSION**

**Rape Shield Rule**

**{4}** Defendant first contends the district court erred in excluding evidence bearing upon A.B.'s "motive to lie," under both the Confrontation Clause and the rules of evidence. In particular, Defendant proffered evidence that he observed A.B. engaging in oral sex with a teenage male, D.B, and that A.B. made false accusations against Defendant in anticipation that he would report what he saw to A.B.'s parents. "It is well settled that our appellate courts generally review evidentiary matters for an abuse of discretion." *State v. Montoya*, 2014-NMSC-032, ¶ 15, 333 P.3d 935. However, we review "challenges to rulings excluding evidence proffered by the defense de novo where the objections are based on Sixth Amendment confrontation rights." *Id.* (emphasis, internal quotation marks, and citation omitted).

**{5}** New Mexico's rape shield rule, Rule 11-413(A) NMRA (1990)[1], provides that:

---

[1] Rule 11-413 (1990) was amended and renumbered in 2012 as Rule 11-412 NMRA, "effective for all cases pending or filed on or after June 16, 2012[.]" Supreme Court Order No. 12-8300-015 (2012); *see* Rule 11-412 Comm. cmt.

> [E]vidence of the victim's past sexual conduct . . . shall not be admitted unless, and only to the extent that the court finds, that evidence of the victim's past sexual conduct is material and relevant to the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

Under this rule, "a defendant must show sufficient facts to support a particular theory of relevance to enable the [district] court to competently assess the constitutional significance of that theory." *State v. Stephen F.*, 2008-NMSC-037, ¶ 7, 144 N.M. 360, 188 P.3d 84 (internal quotation marks and citation omitted). Our Supreme Court established "a five-factor framework to aid the court in determining whether the defendant has adequately established his theory of relevance." *Id.* ¶ 8. Under this framework, the district court determines:

> (1) whether there is a clear showing that the complainant committed the prior acts; (2) whether the circumstances of the prior acts closely resemble those of the present case; (3) whether the prior acts are clearly relevant to a material issue, such as identity, intent, or bias; (4) whether the evidence is necessary to the defendant's case; and (5) whether the probative value of the evidence outweighs its prejudicial effect[.]

*State v. Johnson*, 1997-NMSC-036, ¶¶ 27, 28, 123 N.M. 640, 944 P.2d 869. "[A] showing sufficient under this framework establishes a constitutional right to present evidence otherwise excluded by our [rule]." *Stephen F.*, 2008-NMSC-037, ¶ 8 (alteration, internal quotation marks, and citation omitted).

**{6}** Defendant argues that the district court applied the wrong evidentiary standard when it determined under the first *Johnson* factor that "no clear showing [had] been made [that A.B.] committed the prior acts." We need not address the issue of which evidentiary standard controls under the first *Johnson* factor; however, as the district court's ruling was also predicated on the third *Johnson* factor—relevance to a material issue—which, if correct, is dispositive of the matter. *See Johnson*, 1997-NMSC-036, ¶ 27.

**{7}** Defendant's theory of relevance for the evidence of A.B.'s prior sexual conduct was relevant to her motive to lie. He argued that, unbeknownst to A.B., Defendant observed her engaging in oral sex with D.B., Defendant then told A.B.'s cousin what Defendant saw, and A.B.'s cousin later told A.B. Thus, Defendant argues, A.B. "had a motive to lie and did so in order to preempt [Defendant] from reporting her conduct to her strict parents."

**{8}** The district court found that Defendant failed to demonstrate a "nexus between the evidence and his theory," noting Defendant's failure to introduce evidence that A.B. knew of Defendant's observation before A.B. accused Defendant of sexual abuse.

---

("Changes to the renumbered rule were intended to be stylistic only and not intended to change the rule in any substantive way.").

Indeed, defense counsel conceded in the hearing on Defendant's Rule 11-413 motion that "[t]he incident [with D.B.] occurred before the allegations in this case—or before the disclosure, *but after the allegations*[.]" (Emphasis added.) Absent some evidence demonstrating that A.B. knew of Defendant's observation before she made the accusation against Defendant, we are unable to conclude that the district court erred in finding there was no nexus between the evidence of A.B.'s sexual conduct and Defendant's theory that such conduct motivated her to fabricate her accusation against Defendant. *See Stephen F.*, 2008-NMSC-037, ¶¶ 8, 36 (explaining that the district court may look to "whether the prior acts are clearly relevant to a material issue, such as identity, intent, or bias[,]" and that a defendant must support his or her theory of relevance "with adequate facts showing a nexus between his [or her] proffered evidence and his [or her] theory" (internal quotation marks and citation omitted)). Accordingly, we conclude the district court did not err in excluding the evidence of A.B.'s prior sexual conduct.

**Impeachment of A.B.**

**{9}** Defendant next argues that the district court improperly limited Defendant's ability to impeach A.B. when it ruled that Defendant must first confront A.B. with her out-of-court statements before impeaching her with those statements. We review the district court's ruling for an abuse of discretion. *See State v. Gomez*, 2001-NMCA-080, ¶ 12, 131 N.M. 118, 33 P.3d 669 ("Abuse of discretion is the standard of review on appeal of a [district] court's ruling admitting a prior inconsistent statement[,] pursuant to Rule 11-613 [NMRA]."); *see also State v. Dominguez*, 2007-NMSC-060, ¶ 19, 142 N.M. 811, 171 P.3d 750 (characterizing the district court's ruling on a party's course of examination for impeachment purposes as a matter within its discretion).

**{10}** Defendant cites three points at which he attempted to impeach A.B. with her prior out-of-court statements. First, on cross-examination, defense counsel asked A.B. whether "everybody was in the house when [Defendant] grabbed [her] butt[.]" A.B. answered, "I know my mom and dad—maybe not even my mom, but my dad and [my mom's sister] were in the living room. I can't tell you where everybody was." After defense counsel again asked whether "everybody was in the house," A.B. stated, "I don't know." After defense counsel asked A.B. if, during his pretrial interview with her, she said, "[E]verybody was in the house when [Defendant] grabbed [her] butt[,]" she responded that she did not remember. The jury was excused, defense counsel played a recording of the pretrial interview for A.B., the jury was brought back into the courtroom, and defense counsel asked A.B., "And what you told me was, during our interview, that everybody was in the house, that you did not know exactly where [Defendant's children] were?" A.B. stated, "What I had said was, 'Everybody was in the house,' and then I said, 'Oh, wait. I don't know.' Then I said, 'I don't know where [Defendant's children were],' and so I wasn't sure, even then, who was in the house."

**{11}** The second line of testimony upon which Defendant sought to impeach A.B. was her response to whether she considered Defendant her uncle. A.B. testified, "Well, that depends. Now, I don't, but then, [Defendant] was [her] uncle. He—I mean, basically, still

is, if he's still married to [my mother's sister]." Defense counsel then asked A.B., "At [the pretrial] interview, when I asked you, 'Did you consider [Defendant] your uncle,' you answered 'No,' correct?" A.B. stated that she did not remember. The jury was again excused, defense counsel played a recording of the pretrial interview, the jury was brought back into the courtroom, and defense counsel asked A.B., "So I'm going to ask you that question again. At my interview with you, I asked you, 'Did you consider [Defendant] your uncle?' And you said, 'No[,]' " to which A.B. answered, "Yes."

**{12}** The third line of testimony was in reference to a gesture A.B. made on direct-examination:

> Q: You said, during the direct[-]examination, that when [Defendant] had his hand down there, that he was touching your outer lip of your vagina?
>
> A: Yes.
>
> Q: And that his hand was rubbing and moving on top?
>
> A: Yes.
>
> Q: And you even did a little motion with your finger on top of your hand—
>
> A: Yes.
>
> Q: —for the jury to see?
>
> A: Yes.

After the jury was excused, defense counsel played a recording of A.B.'s S.A.F.E. House interview. The jury was brought back into the courtroom and defense counsel continued:

> Q: Now, when you were asked, by the S.A.F.E. House interviewer, 'Can you show me, like, what his hand was doing,' you put your hand on your crotch, in front of your vagina, over your pants, and you said, 'His hand was, like, just there'—
>
> A: Yes.
>
> Q: —and you made no motion?
>
> A: Yes.

**{13}** With regard to A.B.'s first statement, we note that her testimony concerning whether "everybody was in the house" was not inconsistent with her statement in defense counsel's pretrial interview. Because A.B.'s testimony on this particular point was not inconsistent with her prior out-of-court statements, she could not be impeached by her prior statements. *See* Rule 11-613 NMRA (1993)[2]; *State v. Macias*, 2009-NMSC-028, ¶ 20, 146 N.M. 378, 210 P.3d 804 ("To accomplish impeachment by prior inconsistent statements, the attorney must first elicit in-court testimony about a matter. If the testimony is inconsistent with a witness's prior statement, the attorney confronts the witness with the prior statement."), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110.

**{14}** In the district court, Defendant relied on *State v. Gonzales*, 1992-NMSC-003, ¶¶ 21, 24-25, 113 N.M. 221, 824 P.2d 1023, *overruled on other grounds by State v. Montoya*, 2013-NMSC-020, ¶ 2, 306 P.3d 426, as support for his argument that A.B.'s testimony was impeachable. We are not persuaded. In *Gonzales*, the witness's testimony at trial was inconsistent with her testimony at a preliminary hearing. 1992-NMSC-003, ¶ 21. Following her inconsistent trial testimony, the witness stated that she could not remember her testimony at the preliminary hearing. *Id.* Our Supreme Court concluded that the witness's "forgetfulness *regarding the inconsistency* opened the door for the [s]tate to introduce evidence of the inconsistency." *Id.* ¶ 24 (emphasis added). Thus, it was the witness's inconsistent statements, in conjunction with her forgetfulness—rather than her forgetfulness in and of itself—that opened the door for impeachment with her prior statement. Here, however, A.B. gave no such inconsistent testimony. Neither her statement of fact regarding who was present at the house nor her testimony that she could not remember what she stated in the pretrial interview were inconsistent with her out-of-court statement. *See State v. Astorga*, 2015-NMSC-007, ¶¶ 39-40, 343 P.3d 1245 ("In evaluating whether a witness's trial testimony is inconsistent with the witness's prior statement, the question is . . . simply whether the substance of the witness's trial testimony is inconsistent with the prior statement." (emphasis and citations omitted)); *Macias*, 2009-NMSC-028, ¶ 21 (quoting *State v. Spadafore*, 220 S.E.2d 655 (W.Va. 1975), for the proposition that "where the witness does not testify contrary to his prior statement but demonstrates an absence of memory, such prior statement must be used sparingly to demonstrate lack of integrity in the witness or the reason for surprise to the party which calls him, but these legitimate purposes may not be used as a ruse for introducing inadmissible evidence"). As there was no inconsistent statement in this line of testimony, Defendant could not have impeached A.B. with her out-of-court statement, and Defendant's argument that the district court improperly restricted his right to impeach A.B. on this line of questioning is without merit.

**{15}** To the extent the two other lines of testimony were inconsistent with A.B.'s out-of-court statements, we cannot say the district court erred in ruling that defense counsel must first confront A.B. with her out-of-court statements before defense counsel could

---

2Rule 11-613 was amended in 2012, "effective for all cases pending or filed on or after June 16, 2012." Supreme Court Order No. 12-8300-015; *see also* Rule 11-613 Comm. cmt. ("These changes are intended to be stylistic only. There is no intent to change any result in any ruling on admissibility.").

play the recording in the presence of the jury. Rule 11-613(B) (1993) provides that "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require." "Rule 11-613(B), *permits* departure from the traditional, although often still preferred, method of confronting a witness with his [or her] inconsistent statement prior to its introduction in[]to evidence." *Gomez*, 2001-NMCA-080, ¶ 14 (emphasis added). Here, however, the district court saw fit to adhere to the traditional rule, requiring defense counsel to present A.B. with her inconsistent out-of-court statements before impeaching her with those statements. Accordingly, we conclude the district court did not abuse its discretion. *See State v. Garnenez*, 2015-NMCA-022, ¶ 31, 344 P.3d 1054 ("It is within the district court's discretion to control the order of witnesses, mode of interrogating witnesses, and presentation of evidence." (alterations, internal quotation marks, and citation omitted)); *cf. Dominguez*, 2007-NMSC-060, ¶ 19 (explaining that it is within the district court's discretion to permit a party to depart from the traditional method of confronting a witness with his or her inconsistent statement).

## Dr. Ornelas's Expert Testimony

**{16}**  Defendant's next argument is that the district court erred in permitting Dr. Ornelas to testify regarding her medical examination of A.B. because it was irrelevant and "highly prejudicial." "Admission of expert testimony . . . is a matter within the sound discretion of the [district] court and will not be reversed absent a showing of abuse of that discretion." *State v. Sena*, 2018-NMCA-037, ¶ 52, 419 P.3d 1240 (internal quotation marks and citation omitted), *cert. granted*, 2018-NMCERT-___ (No. S-1-SC-36932, May 25, 2018). "An expert witness may testify if doing so will help the trier of fact to understand the evidence or to determine a fact in issue." *Id.* (internal quotation marks and citation omitted); *see* Rule 11-702 NMRA. "Whether expert testimony will assist the trier of fact is a question of relevance." *Sena*, 2018-NMCA-037, ¶ 52. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence, and . . . the fact is of consequence in determining the action." Rule 11-401 NMRA. Even if it is admissible under Rule 11-401, relevant evidence may still be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice[.]" Rule 11-403 NMRA.

**{17}**  At trial, Dr. Ornelas testified regarding her medical examination of A.B., conducted approximately seven months after Defendant sexually abused A.B. A.B.'s mother informed Dr. Ornelas that A.B. was cutting herself, and that, after December 2009 A.B. had anger and sleep issues, stomach pains, was "making statements reflecting low self-esteem," appeared to be "sad all the time," and "did [not] want to play with her friends." After taking A.B.'s history, Dr. Ornelas conducted a physical examination on A.B. and found A.B. had a "normal exam," meaning the structures of her genital and anal area were normal, with the exception of one "normal variant." Dr. Ornelas testified that a normal examination such as this is consistent with A.B.'s history, her "pubertal development," and someone having touched A.B.'s vaginal area. On

cross-examination, Dr. Ornelas agreed that this finding is also consistent with no sexual abuse having occurred.

**{18}** The State argues Dr. Ornelas's testimony was probative because it established that the results of the medical examination were *not inconsistent* with the charge of CSCM. Defendant cites Dr. Ornelas's testimony that such results were also consistent with no sexual abuse, and relies on *State v. Garcia*, 2005-NMSC-017, ¶ 12, 138 N.M. 1, 116 P.3d 72, for the proposition—used in the context of reviewing sufficiency of the evidence—that "evidence equally consistent with two hypotheses tends to prove neither." (alteration, internal quotation marks, and citation omitted). However, as our Supreme Court has explained, "[a]ny doubt whether the evidence is relevant should be resolved in favor of admissibility." *State v. Johnson*, 2010-NMSC-016, ¶ 41, 148 N.M. 50, 229 P.3d 523 (internal quotation marks and citation omitted). Thus, while Dr. Ornelas's testimony may have also provided support for a proposition not intended by the State, we conclude the district court did not err in admitting her testimony as it was probative of the State's intended inference.

**{19}** Defendant argues that because the State did not present physical evidence nor testimony from third-party witnesses, Dr. Ornelas's testimony was "highly prejudicial." However, "[u]nfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence that tends to suggest decision on an improper basis." *State v. Anderson*, 1994-NMSC-089, ¶ 63, 118 N.M. 284, 881 P.2d 29. Defendant makes no argument as to whether Dr. Ornelas's testimony "tends to suggest decision on an improper basis," and we thus decline to review his Rule 11-403 argument further. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (explaining that we do not review unclear or undeveloped arguments).

**{20}** To the extent Defendant argues that Dr. Ornelas impermissibly vouched for A.B., such argument is limited in his brief in chief to a heading labeled "Dr. Ornelas'[s] vouching testimony was improperly admitted." Defendant does not further develop this particular argument until his reply brief. We therefore decline to review this argument as well. *See id.*; *State v. Simmons*, 2018-NMCA-015, ¶ 23, 409 P.3d 1030 (declining to address arguments raised for the first time in a defendant's reply brief), *cert. denied*, 2017-NMCERT-___ (No. S-1-SC-36767, Dec. 20, 2017).

### *Chouinard* Remedy

**{21}** Defendant also argues the district court's remedy for the loss of evidence was inadequate. "New Mexico has adopted a three-part test to determine whether deprivation of evidence is reversible error." *State v. Chouinard*, 1981-NMSC-096, ¶ 16, 96 N.M. 658, 634 P.2d 680. The test considers whether (1) the state "either breached some duty or intentionally deprived the defendant of evidence[,]" (2) the lost or destroyed evidence was material, and (3) "[t]he suppression of this evidence prejudiced the defendant." *Id.* (internal quotation marks and citation omitted). "Where the loss [of evidence] is known prior to trial, there are two alternatives: [e]xclusion of all evidence

which the lost evidence might have impeached, or admission with full disclosure of the loss and its relevance and import." *Id.* ¶ 23. "The choice between these alternatives must be made by the [district] court, depending on its assessment of materiality and prejudice." *Id.* "Determination of materiality and prejudice must be made on a case-by-case basis." *Id.* ¶ 25.

**{22}** "We review a district court's remedy for lost or destroyed evidence for an abuse of discretion." *State v. Redd*, 2013-NMCA-089, ¶ 18, 308 P.3d 1000. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted). "Additionally, we view the evidence and the inferences drawn from that evidence in favor of the district court's ruling." *Id.*

**{23}** Defendant filed a motion to dismiss his indictment based on the State's destruction of a videotape of his police interview conducted by Detective Gerald Shelden. Defendant stated in his motion that, during the interview, he "adamantly denied" the allegation of sexual abuse, offered to take a polygraph test, and explained that A.B. had a motive to fabricate her allegation because Defendant witnessed her engaging in oral sex with D.B. While the videotape of Defendant's interview was supposed to be saved to a DVD, the video did not properly record and thus the DVD was "not readable." Defendant filed a motion to dismiss based on the "destruction of evidence." The district court denied Defendant's motion, but ordered the parties to submit an instruction to the jury regarding the destruction of evidence and ruled that defense counsel could cross-examine Detective Shelden, who testified at trial regarding the substance of the interview, on the equipment's malfunction.

**{24}** Defendant argues the evidence was material to his case because it could have provided the jury with "an impartial recorder of [Defendant's] demeanor and statements during the questioning." Defendant asserts this evidence is highly probative as it would serve to undermine A.B.'s account of the sexual abuse, as well as Detective Shelden's account of what Defendant stated during the interview. However, Defendant does not explain what characteristics of his demeanor during the interview would undermine A.B.'s and Detective Sheldon's testimony. Thus, any assertion that the jury's verdict was influenced because of its inability to view Defendant's demeanor during the interview is speculative and fails to establish the materiality of the evidence. *See State v. Branch*, 2018-NMCA-031, ¶ 52, 417 P.3d 1141 (recognizing that the "mere possibility" that evidence might have helped the defendant or affected the outcome of the trial "does not establish materiality" (internal quotation marks and citation omitted)).

**{25}** Moreover, while cross-examining Detective Shelden, Defendant questioned him about Defendant's level of cooperation during the interview, but chose not to cross-examine Detective Shelden about Defendant's demeanor. Furthermore, as Detective Shelden merely testified that Defendant denied the allegations against him, the videotape would not have undermined Detective Shelden's account of what Defendant stated during the interview. Accordingly, we conclude Defendant failed to establish prejudice resulting from the lost videotape. *See State v. Duarte*, 2007-NMCA-012, ¶ 11,

140 N.M. 930, 149 P.3d 1027 (explaining that the missing evidence's importance to the defendant is a component of prejudice under *Chouinard*).

**{26}** To the extent Defendant argues the videotape was material because it would have provided the jury with Defendant's account of A.B.'s motive to lie, i.e., her prior sexual conduct with D.B., we have already concluded the district court appropriately excluded such evidence. The lost video recording of Defendant's inadmissible testimony about A.B.'s prior sexual conduct was not material. *See Duarte*, 2007-NMCA-012, ¶ 15 ("The test for materiality, the second factor, is whether there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." (internal quotation marks and citation omitted)).

**{27}** For the foregoing reasons, we conclude the district court did not abuse its discretion in denying Defendant's motion to dismiss and ruling that the jury was to be instructed on the destruction of the evidence and that Defendant could cross-examine Detective Shelden on the subject.

**Reference to A.B. as "Victim"**

**{28}** Defendant next contends the State, by referring to A.B. as a "victim," violated the district court's pretrial order, thereby warranting dismissal on grounds of prosecutorial misconduct. We note that the district court granted in part and denied in part Defendant's motion in limine, which sought to prohibit the State and its witnesses from referring to A.B. as a "victim." The district court issued the following ruling: "Witness shall use name instead of word 'victim.' Attorneys shall instruct witnesses not to use the term 'victim.' [Attorneys] shall not use charged terms like 'child molester,' 'child rapist,' 'child abuser.' State may say [Defendant] molested the child in closing arguments." During its rebuttal argument, the State used the term "victim" on two occasions. In both instances, the State argued Defendant engaged in "blaming the victim" in his closing argument. Nearly five months after the jury returned its verdict, Defendant filed a motion to dismiss based on the State's comments during rebuttal argument. The district court denied Defendant's motion.

**{29}** Because defense counsel did not object to the State's rebuttal argument at trial, we review for fundamental error. *See State v. Sosa*, 2009-NMSC-056, ¶ 26, 147 N.M. 351, 223 P.3d 348 ("Where counsel fails to object, the appellate court is limited to a fundamental error review."). "An error is fundamental if there is a reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *State v. DeGraff*, 2006-NMSC-011, ¶ 21, 139 N.M. 211, 131 P.3d 61 (internal quotation marks and citation omitted).

**{30}** When reviewing whether the State's comments during closing arguments warrant reversal, three factors "carry great influence in our deliberations: (1) whether the statement invades some distinct constitutional protection; (2) whether the statement is isolated and brief, or repeated and pervasive; and (3) whether the statement is invited by the defense." *Sosa*, 2009-NMSC-056, ¶¶ 26, 27, 29, 33. "These three factors are

useful guides, but in the final analysis context is paramount." *Id.* ¶ 34. "Our courts also consider whether the evidence of guilt is overwhelming, whether the improper statement is corrected by counsel or limited by the court, or whether the fact manipulated by the statement is determinative to the outcome of the case." *Sena*, 2018-NMCA-037, ¶ 17. "The common thread running through the cases finding reversible error is that the [state's] comments materially altered the trial or likely confused the jury by distorting the evidence, and thereby deprived the accused of a fair trial." *Id.* (alteration, internal quotation marks, and citation omitted).

**{31}** Defendant does not contend the State's comments invaded some distinct constitutional protection. We therefore do not address this issue. *See Garnenez*, 2015-NMCA-022, ¶ 15 (explaining that "we do not review arguments not raised in [the defendant's] brief in chief"). Moreover, the State's comments were brief and restricted to a relatively limited portion of the State's rebuttal argument.  And while the State's rebuttal argument responded to Defendant's attack of A.B.'s credibility based on the inconsistencies between her in- and out-of-court statements, the State's use of the word "victim" to describe A.B. was not invited by the defense.

**{32}** "Fundamental error occurs when prosecutorial misconduct in closing statements compromises a defendant's right to a fair trial[.]" *Sosa*, 2009-NMSC-056, ¶ 35. To answer whether a comment made during closing arguments deprived a defendant of a fair trial, "we review the comment in context with the closing argument as a whole and in the context of the remaining trial proceedings so that we may gain a full understanding of the comments and their potential effect on the jury." *State v. Fry*, 2006-NMSC-001, ¶ 50, 138 N.M. 700, 126 P.3d 516 (internal quotation marks and citation omitted). In this instance, the State's comments did not deprive Defendant of a fair trial. The State's comments in rebuttal argument were an attempt to describe Defendant's closing argument wherein he called A.B.'s credibility into question. Moreover, the thrust of the State's rebuttal argument was to highlight the significance of A.B.'s behavior following the incident of sexual abuse, her relationship with D.B., Defendant's intimidation of A.B., Detective Shelden's credibility, and the consistency of A.B.'s in- and out-of-court statements. Viewing the State's brief comments in context with the rebuttal argument as a whole, as well as the evidence of guilt presented by the State, *see Arvizo II*, 2018-NMSC-026, ¶¶ 23-24, *Arvizo I*, 2016 WL 3970910, mem. op. ¶¶ 24, 33, we conclude the State's comments did not deprive Defendant of a fair trial. We therefore affirm the district court's order denying Defendant's motion to dismiss based on prosecutorial misconduct during closing argument.

**Recusal**

**{33}** Defendant argues he is entitled to resentencing or, alternatively, a record from the district court regarding the basis for the trial judge's recusal after the close of trial but prior to sentencing. "[R]ecusal rests within the discretion of the trial judge, and will only be reversed upon a showing of an abuse of that discretion." *State v. Riordan*, 2009-NMSC-022, ¶ 6, 146 N.M. 281, 209 P.3d 773.

**{34}** Defendant relies on *Sims v. Ryan*, 1998-NMSC-019, ¶ 9, 125 N.M. 357, 961 P.2d 782, for the proposition that "[g]enerally, an unusual or exigent circumstance must exist for a different judge to impose a sentence[,]" and that he is entitled to either resentencing by the trial judge or a record regarding the basis for the trial judge's recusal because neither the trial nor sentencing judge made findings about unusual or exigent circumstances. However, *Sims* involved the original judge's sentencing of a defendant after the defendant pleaded guilty to DWI, followed by the municipal court's presiding judge voiding the original judge's sentence because the original judge did not adhere to the presiding judge's unwritten policy for DWI offenses. *Id.* ¶ 2. Our Supreme Court noted that the presiding judge did not argue the existence of any unusual or exigent circumstances, and he was therefore incapable of voiding the original judge's sentence. *Id.* ¶¶ 9, 11. Such circumstances are not present in this case, and *Sims* is therefore inapplicable.

**{35}** Without providing any evidence in support of his contention, Defendant argues that "it is a reasonable inference that something occurred during the trial requiring the [trial judge] to recuse [himself]." Although the district court's notice of recusal did not state the reasons for recusal, "we must presume, in the absence of any evidence to the contrary, that [the judge] is doing so in full conformity with his [or her] duty." *Gerety v. Demers*, 1978-NMSC-097, ¶ 11, 92 N.M. 396, 589 P.2d 180; *see In re Schwartz*, 2011-NMSC-019, ¶ 20, 149 N.M. 721, 255 P.3d 299 (extending the holding in *Gerety* that a judge may issue a notice of recusal without stating the reasons for such action). We are therefore unable to conclude the trial judge abused his discretion in recusing himself, and we decline to remand for resentencing or supplementing the record.

**Cumulative Error**

**{36}** Defendant's final argument is that cumulative error mandates reversal of his convictions. "The doctrine of cumulative error applies when multiple errors, which by themselves do not constitute reversible error, are so serious in the aggregate that they cumulatively deprive the defendant of a fair trial." *State v. Salas*, 2010-NMSC-028, ¶ 39, 148 N.M. 313, 236 P.3d 32 (internal quotation marks and citation omitted). As there was no error in Defendant's case, he received a fair trial and his claim of cumulative error is without merit. *See id.* ¶ 40 (concluding that where there is no error, the defendant therefore received a fair trial and the defendant's cumulative error claim fails).

**CONCLUSION**

**{37}** The judgment and sentence are affirmed.

**{38} IT IS SO ORDERED.**

**JULIE J. VARGAS, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**MEGAN P. DUFFY, Judge**