This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                        **NO. 31,885**

**BRANT GREEN,**

Defendant-Appellant,

**APPEAL FROM THE DISTRICT COURT OF LUNA COUNTY**
**Daniel Viramontes, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Frechette & Associates, P.C.
Todd Hotchkiss
Albuquerque, NM

for Appellant

# MEMORANDUM OPINION

**ZAMORA, Judge.**

{1}     Brant Green (Defendant) appeals from his convictions for one count of criminal sexual penetration in the second degree, contrary to NMSA 1978, Section 30-9-11(E) (2009), and three counts of criminal sexual contact of a minor in the second degree, contrary to NMSA 1978, Section 30-9-13(B) (2003). On appeal, Defendant contends that his Sixth Amendment right to confrontation was violated by the district court (1) restricting Defendant's cross-examination of Victim regarding her denial Defendant sexually molested her, (2) restricting Defendant's cross-examination of Michelle Salazar to exclude specific instances of conduct, and (3) restricting Defendant's cross-examination of witnesses with an unofficial preliminary hearing transcript from another county. Defendant also contends that the district court erroneously admitted evidence pursuant to Rule 11-608(A) NMRA, and that cumulative error requires reversal. We address each issue in turn and affirm Defendant's convictions. However, we note that the second amended judgment and sentence entered in this case does not accurately reflect Defendant's convictions for one count of criminal sexual penetration and three counts of criminal sexual contact with a minor. Accordingly, we remand this matter for entry of a corrected judgment and sentence.

**BACKGROUND**

{2}     Defendant was charged with one count of criminal sexual penetration and multiple counts of criminal sexual contact with a minor arising from allegations made

2

by his minor stepdaughter (Victim). Victim alleged that Defendant committed criminal sexual misconduct in both Luna and Sierra Counties. This appeal arises from the prosecution of the instances of criminal sexual misconduct occurring in Luna County.

**DISCUSSION**

**I.     Confrontation Clause**

{3}     Defendant contends that the district court violated his right to confrontation by unduly restricting his ability to cross-examine witnesses. "Although the extent of cross-examination is a matter within the discretion of the trial court, we review de novo the question of whether the Confrontation Clause has been violated." *State v. Smith*, 2001-NMSC-004, ¶ 19, 130 N.M. 117, 19 P.3d 254. "[T]he trial court retains wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* (alteration in original) (internal quotation marks and citation omitted). "The Confrontation Clause merely guarantees an opportunity for effective cross-examination; it does not guarantee that the defense may cross-examine a witness in whatever way, and to whatever extent, the defense might wish." *State v. Sanders*, 117 N.M. 452, 459, 872 P.2d 870, 877 (1994) (internal

quotation marks and citation omitted). "Only when cross-examination is unduly restricted does constitutional error result." *Smith*, 2001-NMSC-004, ¶ 19.

**A.      Defendant's Cross-Examination of Victim**

{4}      Defendant contends that the district court unduly restricted Defendant's cross-examination of Victim via application of the rape shield law and precluded Defendant from presenting a full and fair defense. According to our Supreme Court, "[i]f application of the rape shield law or rule would conflict with the accused's confrontation right, if it operates to preclude the defendant from presenting a full and fair defense, the statute and rule must yield." *State v. Stephen F.*, 2008-NMSC-037, ¶ 6, 144 N.M. 360, 188 P.3d 84 (alteration in original) (internal quotation marks and citation omitted). "Under our statute and rule of evidence, a defendant must show sufficient facts to support a particular theory of relevance to enable the trial court to competently assess the constitutional significance of that theory." *Id.* ¶ 7 (internal quotation marks and citation omitted).

{5}      In the present case, defense counsel was cross-examining Victim regarding her multiple denials to law enforcement that Defendant had molested her, when the State objected and asserted the rape shield statute. According to Victim's testimony, Victim had told her boyfriend that Defendant had been touching her inappropriately, and her boyfriend called law enforcement officials. Law enforcement officials contacted

4

Victim, asking her if she was okay and safe, and Victim told them to leave her alone and hung up on them. The next day at school, Victim was called into the school counselor's office where an officer was present who asked Victim if she had been molested. Victim denied that Defendant had molested her, told the officer it was a misunderstanding, and informed the officer that it was something that had happened years before and been done by someone else. At trial, Victim testified that she originally lied to law enforcement officials because Defendant had threatened her. Specifically, Victim testified that Defendant told her he would make her life "a living hell," Victim's mother would go to jail, and Victim and her siblings would end up in foster care if she told.

{6} During cross-examination, defense counsel asked Victim if the person that had molested her previously had been prosecuted. The State objected on the grounds that the rape shield law did not permit that line of questioning. Defense counsel argued that the question was not aimed at eliciting testimony regarding sexual proclivity, but was to demonstrate sophistication with the judicial system and with testifying. The district court sustained the State's objection and ordered defense counsel to "move on."

{7} Subsequently, defense counsel asked Victim if anyone had ever spoken to her about "good touch" and "bad touch." Victim testified that she had been spoken to

about this subject after her godfather had molested her. Defense counsel then asked Victim whether anything bad had happened to her as a result of her reporting the incident with her godfather. Again, the State objected on rape shield grounds. Defense counsel argued that Victim had testified that she denied her molestation by Defendant to law enforcement officials because she was scared, and that by pointing out that she had reported molestation before and nothing bad had happened to her, the defense would be able to challenge her explanation for changing her story. The district court ruled that defense counsel could ask only that question and no more on the subject. Defense counsel asked and Victim responded, "I don't know."

{8}     On redirect examination, the State sought leave to ask Victim when the prior sexual molestation by her godfather had occurred, arguing that defense counsel had implied that Victim may have confused the two incidents and the State should have the opportunity to clarify on redirect examination that Victim was not confused. The district court ruled that, if the State questioned Victim about the prior sexual molestation, defense counsel would be permitted to ask about Victim's sophistication with the judicial process. The State asked Victim when the alleged abuse occurred, and what happened to the individual who committed the abuse. Victim testified that she was six years old at the time, and that the perpetrator of the abuse was convicted. Defense counsel declined to recross-examine Victim.

{9}     We understand Defendant to argue that the district court erred in not permitting him to question Victim regarding whether or not her godfather was prosecuted, and in limiting defense counsel's questioning regarding whether anything bad happened as a result of Victim's prior report of sexual molestation.  To the extent Defendant argues that the district court violated his right to confrontation by not permitting his counsel to ask whether the previous offender was prosecuted, we do not address whether there was a violation because we conclude that any violation that may have occurred in this regard was harmless.  *See State v. Martinez*, 1996-NMCA-109, ¶ 20, 122 N.M. 476, 927 P.2d 31 (applying a harmless error analysis to the defendant's claim that his cross-examination was unduly restricted).

{10}     Defendant asserts that harmless error does not apply under *Bullcoming v. New Mexico*, ___ U.S. ___, 131 S. Ct. 2705, 2716 (2011).  We disagree that *Bullcoming* stands for the proposition that a harmless error analysis should not be applied in determining whether a confrontation violation constitutes reversible error.  Moreover, we note that our New Mexico Supreme Court continues to apply a harmless error analysis to confrontation clause violations.  *See generally State v. Tollardo*, 2012-NMSC-008, ¶ 2, 275 P.3d 110.

{11}     Applying a harmless error analysis, we note that "[w]here . . . a constitutional error has been established, the [s]tate bears the burden of proving that the error is

harmless." *Id.* ¶ 25 (citing *State v. Gutierrez*, 2007-NMSC-033, ¶ 18, 142 N.M. 1, 162 P.3d 156). A constitutional error is harmless "only if we conclude that there is no reasonable possibility the error contributed to the jury's decision to convict [the d]efendant." *Id.* ¶ 45. "[I]n reaching a judgment as to the likely effect of the error, [we] evaluate all of the circumstances surrounding the error." *Id.* ¶ 43.

{12}    Here, the State points out that the information defense counsel sought to elicit from Victim during cross-examination—i.e., whether the previous perpetrator was prosecuted—was asked by the State during redirect examination. Defendant has not informed this Court what further information he wanted to elicit through the cross-examination of Victim on this issue, how that information would have been relevant, or how this further questioning would have allowed him to present a full and fair defense. *See Stephen F.*, 2008-NMSC-037, ¶ 7 (stating that "a defendant must show sufficient facts to support a particular theory of relevance" for the court "to competently assess the constitutional significance of that theory"); *see also Smith*, 2001-NMSC-004, ¶ 21 (requiring the defendant to show on appeal how the evidence the defendant would have elicited was relevant). Moreover, the district court explicitly ruled that once the State questioned Victim about the prior incident, defense counsel would be permitted to question Victim about "any sophistication with respect to knowledge of the courts." Defense counsel chose not to recross-examine Victim.

8

Because the evidence Defendant sought to elicit was before the jury, and because the district court later allowed defense counsel to pursue the line of questioning complained of, we conclude that any alleged violation of Defendant's right to confrontation was harmless error.

{13} To the extent Defendant contends that the district court violated his right to confrontation by limiting his questioning of Victim regarding which negative consequences arose from her reporting the incident involving her godfather, we conclude that Defendant has not demonstrated that the district court violated his right to confrontation. The State points out that the district court allowed defense counsel to ask Victim about the negative consequences of reporting. In his reply brief, Defendant responds that the "ruling by the [district] court was not to permit more inquiry, but to stop inquiry." Defendant goes on to argue: "The State asserted . . . that defense counsel never asserted that he intended or desired to go beyond asking the one question regarding [Victim's] earlier disclosure. The record shows counsel did not intend to limit his cross[-]examination of [Victim]." We note, however, that the record is devoid of any argument or indication by defense counsel as to what further questions he wished to ask of Victim and how those questions were relevant to the defense. *See State v. Johnson*, 1997-NMSC-036, ¶ 33, 123 N.M. 640, 944 P.2d 869 ("A defendant must specify the issue or issues the evidence is intended to address and

9

demonstrate how the evidence is truly probative on those issues[.]" (internal quotation marks and citation omitted)). While Defendant asserts on appeal that the district court's ruling limited his ability to present a full and fair defense, Defendant does not indicate what additional questions he would have asked, or what evidence he hoped to elicit. *See Smith*, 2001-NMSC-004, ¶ 21 (citing *In re Ernesto M.*, 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d 318, for the proposition that "[a]n assertion of prejudice is not a showing of prejudice"). As a result, we conclude that Defendant has failed to demonstrate error on appeal in this regard.

**B.      Testimony of Michelle Salazar**

{14}      The State called Michelle Salazar, an employee of Children, Youth and Families Department (CYFD), as a rebuttal witness to testify regarding Defendant's character for veracity. Salazar's testimony was premised on both her interactions with Defendant in her position at CYFD, and in Defendant's capacity as a substitute teacher where he taught Salazar's son. As an employee of CYFD, Salazar's testimony was constrained by confidentiality requirements contained in NMSA 1978, Section 32A-4-33 (2009). Defendant contends that his ability to effectively cross-examine Salazar regarding the specific instances of conduct that made up her opinion that Defendant was not truthful was unduly restricted by these confidentiality

requirements, and that, as a result, the district court violated his right to confrontation by allowing Salazar to testify.

{15} We disagree with Defendant's contention that his right to cross-examine Salazar was unduly restricted. First, we note that the district court allowed defense counsel to inquire into the specific instances of conduct that formed Salazar's opinion. Moreover, to the extent Defendant is arguing that his right to cross-examine Salazar was unduly restricted despite his ability to inquire into the specific instances of conduct, we note that Defendant moved to strike Salazar's testimony. The district court granted Defendant's motion to strike Salazar's testimony to the extent it was based on Salazar's employment at CYFD and her discussion with other CYFD employees, but did not strike Salazar's testimony to the extent it was premised on Salazar's interaction with Defendant through his position as a substitute teacher and Salazar's discussions with school employees. Given that the testimony Defendant complains he could not cross-examine Salazar about was stricken, we conclude that the district court did not violate Defendant's right to confrontation.

{16} Finally, Defendant relies on *State v. Guess*, 98 N.M. 438, 441, 649 P.2d 506, 509 (Ct. App. 1982), for the proposition that "[w]hen [a] defendant is placed in the position of being unable to exercise his Sixth Amendment privilege because the witness cannot be cross-examined, the remedy is to exclude the evidence of that

11

witness." We disagree with Defendant's characterization of *Guess* as analogous given that, in the present case, the evidence was essentially excluded, as it was stricken from the record. Furthermore, we conclude that Defendant's citation to federal authority is similarly distinguishable.

**C.      Preliminary Hearing Transcripts**

{17}      Defendant contends that the district court erred in not permitting him to impeach various witnesses using an unofficial transcript of a preliminary hearing conducted in Sierra County. On the evening after the first day of trial, defense counsel informed the district court that he intended to impeach some of the witnesses with preliminary hearing testimony from both the Luna County and Sierra County hearings. Defense counsel informed the district court that the transcript prepared was not an official transcript and offered a copy to the prosecutor to review. The State objected to the use of an unofficial transcript on the grounds that it would not have sufficient time to review the tapes to check for accuracy and pointed to the district court's pretrial ruling that information relating to the Sierra County charges would not be admissible. The district court determined that the late disclosure of the unofficial transcript would be unduly burdensome on the State if Defendant were allowed to impeach witnesses using the unofficial transcript of the Sierra County preliminary hearing.

{18} Although Defendant places his argument under the heading of "Denial and Restrictions of Defendant's Sixth Amendment Rights to Confront and Cross[-]Examine Witnesses," Defendant provides no argument in support of how the district court violated his right to confrontation. Defendant has not identified which witnesses he wanted to impeach or how the preliminary hearing transcript differed from the testimony at trial. Hence, Defendant has failed to demonstrate how he was unable to present a full and fair defense, and he has therefore failed to demonstrate a violation of his right to confrontation.

{19} To the extent Defendant argues that the district court's decision was in violation of the rules of criminal procedure, by not identifying the witnesses he hoped to impeach or how the preliminary hearing transcript would have allowed him to do so, Defendant has not demonstrated how he was prejudiced by the district court's rulings. "In the absence of prejudice, there is no reversible error." *State v. Fernandez*, 117 N.M. 673, 676, 875 P.2d 1104, 1107 (Ct. App. 1994). As we stated above, "[a]n assertion of prejudice is not a showing of prejudice." *In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10. We therefore conclude that Defendant has failed to demonstrate reversible error in this regard.

**II.   Rule 11-608(A) NMRA**

13

{**20**}     Defendant contends that the district court abused its discretion in permitting Salazar to testify pursuant to Rule 11-608, regarding her opinion of Defendant's character for untruthfulness and regarding Defendant's reputation in the community for untruthfulness.  Specifically, Defendant contends that the State failed to lay a proper foundation for Salazar's testimony.  Because, as we noted above, Salazar's testimony was stricken to the extent it was premised on her dealings with Defendant through her work with CYFD and her knowledge of his reputation through her CYFD co-workers, we limit our review to a consideration of her testimony to the extent it was premised on Salazar's interaction with Defendant as a substitute teacher and her discussions with school employees.

{**21**}     "We review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *See State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72.  "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case.  We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted).

{22}   Pursuant to Rule 11-608(A), "the credibility of a witness may be attacked by evidence in the form of an opinion or as to reputation, but only as it relates to the witness's character for truthfulness or untruthfulness and only after a proper foundation is laid." *Constr. Contracting & Mgmt., Inc. v. McConnell*, 112 N.M. 371, 376, 815 P.2d 1161, 1166 (1991). "[A]lthough both opinion and reputation testimony are admissible under Rule 11-608[(A)], they require different factual foundations." *Id.*

{23}   Salazar testified that Defendant was her son's substitute teacher. She also testified that she was present when several teachers were talking about an instance where Defendant's stepson wrecked Defendant's car, but Defendant did not want to report it to law enforcement because his stepson did not have a license. She testified that her own opinion was that Defendant was not truthful. Salazar also testified that she knew other people in the community that knew Defendant, and that she had heard that his reputation in the community was as someone who was not truthful.

{24}   We conclude that the State laid a sufficient foundation for Salazar's opinion and reputation testimony. First, with respect to Salazar's testimony as to Defendant's reputation, the prosecutor asked Salazar questions about how long she had worked in and therefore been a part of the community, and whether she had heard about Defendant's reputation for truthfulness. Salazar testified as to how long she had

15

worked in the community and that she had heard about Defendant's reputation for truthfulness. We conclude this was sufficient to establish a foundation for Salazar's testimony regarding Defendant's reputation. *See McConnell*, 112 N.M. at 376, 815 P.2d at 1166 (indicating that questions regarding how long the witness had lived in the community or whether the witness was familiar with the defendant's reputation for truth and veracity establish a foundation for testimony about a defendant's reputation for truthfulness).

{25}     Similarly, Salazar's testimony about her interaction with Defendant and her impressions from other people, such as the teachers she testified to having spoken with about Defendant, provides a sufficient foundation for Salazar's opinion that Defendant was not trustworthy. *See id.* (concluding that a proper foundation was laid for the witness to testify as to his opinion of the defendant's veracity based on the witness's "own repeated dealings with [the defendant] and his impressions from other people"). To the extent Defendant contends that the district court abused its discretion in admitting Salazar's testimony about Defendant's veracity because Salazar could not remember the names of each person she talked to and had no personal knowledge of Defendant's stepson's automobile accident, we conclude that these arguments go to the weight given Salazar's testimony and not its admissibility. *Cf. State ex rel. Elec. Supply Co. v. Kitchens Constr., Inc.*, 106 N.M. 753, 756, 750 P.2d 114, 117 (1988)

16

(relying on the principle that, with respect to business records, "absence of personal knowledge shall not affect admissibility"). Accordingly, we conclude that the district court did not abuse its discretion in this regard.

## III.    Cumulative Error

{26}    Defendant contends that his convictions should be reversed under the doctrine of cumulative error. "The doctrine of cumulative error requires reversal when a series of lesser improprieties throughout a trial are found, in aggregate, to be so prejudicial that the defendant was deprived of the constitutional right to a fair trial." *State v. Duffy*, 1998-NMSC-014, ¶ 29, 126 N.M. 132, 967 P.2d 807, *overruled on other grounds by Tollardo*, 2012-NMSC-008, ¶ 37 n.6. The "doctrine of cumulative error is strictly applied," and may not be successfully invoked if the record as a whole demonstrates that the defendant received a fair trial. *State v. Trujillo*, 2002-NMSC-005, ¶ 63, 131 N.M. 709, 42 P.3d 814.

{27}    Although in the present case we assumed without deciding that the district court erred with respect to its limitation on Defendant's ability to cross-examine Victim regarding prior instances of sexual abuse and concluded that such error was harmless, our review of Defendant's issues has resulted in no other determination that error occurred. As a result, there is no basis for concluding that cumulative error exists.

**CONCLUSION**

{28}    For the foregoing reasons, we affirm Defendant's convictions for one count of criminal sexual penetration in the second degree, contrary to Section 30-9-11(E), and three counts of criminal sexual contact of a minor in the second degree, contrary to Section 30-9-13(B).  We remand to the district court for correction of the second amended judgment and sentence to accurately reflect Defendant's convictions.

{29}    **IT IS SO ORDERED.**


_____

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**


_____
**CYNTHIA A. FRY, Judge**


_____
**LINDA M. VANZI, Judge**